**CARRIE L. WATERBURY v. CHARLES A. MUNN, GURNEE MUNN and ECTOR ORR MUNN, individually and as Trustees of Trusts under the Will of Carrie L. Munn, deceased. GRACE M. AMORY; HERBERT PULITZER, Jr., a minor, GLADYS M. PULITZER, a minor. MARY PAUL MUNN; CHARLES A. MUNN, JR.; MRS. FRANCES MUNN BAKER; GURNEE MUNN, JR.; FERNANDA WANAMAKER KELLOGG; T. DENNIE BOARDMAN; and REGINALD BOARDMAN.**

32 So. (2nd) 603                                    June Term, 1947
November 25, 1947                                     En Banc

*Walter B. Travers* and *William J. Lake,* for appellant.

*Bert Winters* and *Alley, Drew, Burns & Middleton,* for appellees.

SEBRING, J.:

Carrie L. Munn died testate in November, 1922. She left a will dated May 16, 1913,, and a codicil thereto dated January 29, 1914. At the time of her death she had five children, namely, Charles Munn, Gurnee Munn, Ector Orr Munn, Carrie L. Munn Boardman (now Carrie L. Waterbury, the appellant) and Gladys M. Munn (now deceased). The will named Charles Munn and Gurnee Munn, two of the children, executors and trustees, and contained a provision that Ector Orr Munn should become a trustee when he reached the age of twenty-five years.

By Paragraph Seventh of the original will the testatrix devised certain real property in Chicago, Illinois, known as

the Wellington Hotel Property, to her trustees, in trust, with directions that the net income, rents and profits therefrom should be paid to the five children for life, or to the surviving children of such children should either of them die prior to the termination of the trust; and that upon the death of the last surviving child of the testatrix, the trustees should divide the property into shares equal in number to the number of children of the testatrix who had died leaving descendants living at the death of the last surviving child, and pay the proceeds of said shares over to such descendants.

Paragraph Seventh also provided: "I further direct that inasmuch as the trusts . . . are created by me for the express purpose of protecting my children and descendants from want and inconvenience, by reason of the vicissitudes of life, so far as reasonable foresight can prevent, it is my will that the portion of the net income, rents and profits of the trust property to be paid to any of my children or descendants . . . shall be so payable . . . only upon his or her personal receipt, and that none of them respectively shall have any power to anticipate, or, in any manner encumber the same or any part thereof. It is also my will that the income receivable by each of my children and descendants . . . shall not be subject to any legal process for payment of his or her debts."

The pertinent provisions of the codicil in controversy are worded as follows:

"WHEREAS I have, in PARAGRAPH SEVENTH of my said will, directed that . . . . the 'Wellington Hotel Property' shall be held in trust and not divided until the death of the last surviving of my children, Charles A. Munn, Gurnee Munn Carrie L. Boardman, Gladys M. Amery and Ector Orr Munn;

"Now I do hereby revoke said restriction and limitation and empower the trustees . . . at any time in their discretion, to sell the said Wellington Hotel Property . . . on such terms, agreements and conditions as they may think best . . . and make distribution of the proceeds . . . as provided and directed in PARAGRAPH NINTH of my said will in respect of my residuary estate; PROVIDED, Nevertheless, that until the said Wellington Hotel Property be sold, as in this codicil provided, the trustees . . . shall have and enjoy the same

rights, privileges and powers in respect of said property as are given them in PARAGRAPH SEVENTH . . . of my said will, and make distribution of the net income derived from said property as in said paragraphs directed . . . "

In December of 1939 Charles A. Munn and Gurnee Munn assigned their life income from the trust to their sister, Carrie L. Waterbury, the appellant. In 1945 a dispute arose between the parties as to whether the assignments were valid, because of certain spendthrift provisions in the will and codicil.

To settle the controversy, Carrie L. Waterbury instituted suit in the Circuit Court of Palm Beach County making all persons interested in the will and codicil parties defendant. At final hearing on bill, answers and evidence taken before a special examiner, the chancellor dismissed the bill; holding that Paragraph Seventh of the original will created a spendthrift trust which was not revoked or destroyed by the subsequent codicil, and that consequently the assignments from Charles A. Munn and Gurnee Munn were unenforceable.

Carrie L. Waterbury has taken an appeal from that decree.

A spendthrift trust is one that is created with the view of providing a fund for the maintenance of another, and at the same time securing it against his own improvidence or incapacity for self protection. Groom v. Ocala Plumbing & Electric Co., 62 Fla. 460, 57 So. 243. The typical spendthrift trust is one in which the life cestui's right to recover income is inalienable, either by his own act or that of his creditors, during all or a part of the life of the beneficiary. See Bogert, Trusts and Trustees, V. 1, Sec. 222, p. 715; Griswold, Spendthrift Trusts, Sec. 1, p. 3; Scott on Trust, V 1, Sec. 152; p. 744.

It is our view that a valid spendthrift was created by paragraph Seventh of the original will of the testatrix. The only real question before us, therefore, is whether the subsequent codicil executed by the testatrix had the effect of altering, modifying or destroying the spendthrift features of the original will, so as to remove the restrictions or alienability of the rents, income and profits by the life beneficiaries.

Paragraph Ninth of the original will, to which reference is made in the subsequent codicil, devised and bequeathed the residue of the estate of the testatrix to the same children who are named as trustees under Paragraph Seventh of the will, to be held by them in equal shares for the use and benefit of the five children of the testatrix, with directions that the trustees distribute the net income, or a portion thereof, from each of such respective shares to the children of the testatrix until each had attained a certain specified age, and that the trustees then distribute the proceeds realized from the sale of the trust property to the beneficiaries.

In this latter connection, Paragraph Ninth of the will provided: "The said trustees shall not be required to sell for purposes of distribution . . . on the request or demand of any party or parties in interest, any real estate belonging to my said residuary estate, but may retain the same subject to the trusts created by said PARAGRAPH NINTH for a period not to exceed twenty-one (21) years after by death with full power, nevertheless, to sell and dispose of any and of all the real estate . . . within said period, for purposes of distribution . . . whenever in their judgment it will be for the best interests of my said residuary estate . . . "

It will be observed that the effect of the codicil executed by the testatrix was to enlarge the interests which the five children held in and to the property which was the subject of the trust created under Paragraph Seventh of the will by bringing them under the provisions of Paragraph Ninth. Prior to the execution of the codicil the children were entitled only to a life income from the trust property, without power of alienation or anticipation. After the execution of the codicil they not only remained income beneficiaries for life or until the sooner termination of the trust, but also became entitled to their respective shares of the proceeds of the corpus, when the trust property was finally sold and the trust terminated.

It is urged by counsel for all parties to this appeal that by the execution of her codicil the testatrix completely revised her former expressed intention "to protect her children against the vicissitudes of life," which was the prevailing reason causing her to provide in her original will that the net income to be

derived from the trust created by Paragraph Seventh should not be alienable or subject to anticipation, and that, therefore, the spendthrift features of the original will became abrogated and annulled. As grounds for the argument the parties submit that it is entirely inconsistent with an intention to continue spendthrift trust features of a will in force, for the settlor subsequently to change the original will by making her children who were theretofore income beneficiaries, thereafter both income beneficiaries and remaindermen, with the power reposed in three of the children, as trustees, to terminate the trust at any time in their absolute discretion, by selling the trust property and distributing the proceeds to themselves and the remaining two children, or their descendants.

We cannot agree that the conclusions reached by the parties necessarily follow at all events from the arguments put forward by counsel.

It is well settled that, whereas the revocation of a prior will will be presumed where a subsequent will is executed, confirmation of a prior will will be presumed where the subsequent instrument is a codicil. The execution of a codicil has the effect of republishing the prior will as of the date of the codicil; subject, of course, to the cardinal rule applicable to the construction of testamentary instruments, that the intention of the testator, if ascertainable, must prevail. See Massachusetts Audubon Soc. v. Ormond Village Improvement Association, 152 Fla. 1, 10 So. (2nd) 494. The instruments should be construed together and if the codicil can be given any operative effect consistent with the provisions of the will, the latter provisions of the will be deemed to be unaffected by the codicil. See 28 R.C.L., Sec. 157, p. 199.

It seems perfectly plain that the intent of the testatrix in executing the codicil was to insure to her immediate heirs not only the life income in the property the subject of the trust, but also the proceeds derived from the corpus at the termination of the trust—a property interest which prior to the execution of the codicil was earmarked for the descendants of her children upon the death of the last survivor. The fact that by the codicil the testatrix gave to three of her children, as trus-

tees, the power to bring the trust to an end by the sale of the trust property and the distribution of the proceeds to themselves and the other two children does not, in our opinion, show an intention on the part of the testatrix to abrogate that portion of the will which provides that the income receivable by the children as life tenants shall be inalienable, and not subject to anticipation.

We find nothing in the testimony in the record which leads us to a contrary conclusion.

It follows, therefore, that the decree appealed from should be affirmed.

It is so ordered.

TERRELL, CHAPMAN, BUFORD and BARNS, JJ., concur

THOMAS, C. J., and ADAMS, J., dissent.