In the Matter of James T. & Gloria N. NICHOLS, Debtors.

Jary C. NIXON, Trustee, Plaintiff,

v.

P.J. PEDONE & COMPANY, INC., Defendant.

Bankruptcy No. 82–823.

Adv. No. 83–421.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

June 13, 1984.

Jary C. Nixon, Tampa, Fla., for plaintiff.

J. David Pobjecky, Lakeland, Fla., for defendant.

## MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matters under consideration are two Motions for Summary Judgment, one filed by Jary C. Nixon, the duly appointed and acting Trustee for the estate of James T. and Gloria N. Nichols (Debtors); and the other by the Debtors. While the initial complaint named P.J. Pedone and Company, Inc. as a Defendant, the corporation is not involved in the matters under consideration. The above-captioned adversary proceeding was commenced by the Trustee who filed the complaint and sought an order of turnover of monies and initially named only P.J. Pedone & Company, Inc. as a defendant. The initial claim of the Trustee was based on the contention that the Defendant, P.J. Pedone & Company, Inc. has in its control and possession certain funds which, according to the claim of the Trustee, are properties of the estate by virtue of § 541 of the Bankruptcy Code, and, therefore, the same shall be turned over to the Trustee pursuant to § 542 of the Bankruptcy Code to be administered for the benefit of the creditors.

Shortly after the commencement of the adversary proceeding, the Debtors intervened and claimed that the monies held by the initially named defendant are not properties of the estate and, therefore, should not be turned over to the Trustee for administration. In due course, the Trustee and the Debtors moved and sought a determination of the controversy by way of a Motion for Summary Judgment contending that there are no genuine issues as to any material facts and that the controversy can be resolved as a matter of law.

James T. Nichols, at the time relevant to the matters under consideration, was employed by the initially named Defendant and while he was employed, the company maintained a profit sharing and trust plan for the benefit of its employees. Under the framework of the plan, the company established a trust which consisted of contributions made by the employer and also by the participating employees together with any income and any appreciation which was derived from the contributions (Plan ¶ 2.25, 2.26). The company maintained a separate account for the benefit of each participating employee to which all contributions made by the employer were allocated (Plan ¶ 2.7). The profit sharing and trust plan also provided that the amount of the employer's contributions which would vest depended on the length of the employment of the participating employee and also upon the reason of the termination of the employment of the employee (Plan ¶ 6.2, 6.3). The account of the participating employees to which the employees' contributions were also allocated is deemed to be 100% vested at all times and thus, not conditioned either on the length of employment or on the reason for termination of the employment (Plan ¶ 2.17, 6.1). While employed by the company, Mr. Nichols was a participant in the plan and at the time relevant to the controversy, that is, April 27, 1983, his account indicated a balance of $5,376.51.

The plan was designed to establish a qualified trust within the meaning of § 401 of the Internal Revenue Code and was designed in a fashion to take advantage of the special tax treatment accorded to such trust by § 501 of the Internal Revenue Code. In order to comply with the requirements of the Internal Revenue Code, the plan contains a provision that the participants have no right to transfer, assign, encumber or otherwise alienate any of the benefits or proceeds from the benefits which they might expect to receive (Plan ¶ 11.2). The plan further provides that none of the benefits obtained under the plan are subject to any claim of any of the creditors of the participating employees.

In spite of the seemingly iron-clad provisions in the plan which are designed to prohibit alienation of any funds contributed to the plan either by the employer or by the employee, the plan provides that the participating employee is able under certain specific conditions to borrow funds from the trust. The administrative committee of the trust has the discretion to authorize the trustee to loan a participating employee any amount not in excess of the participating employee's vested interest in both his and the employer's account. The plan also provides that any such loan made must carry a reasonable interest rate, must be adequately secured and must be repaid within ten years.

It is the contention of the Trustee that the funds now held by the Defendant are properties of the estate by virtue of § 541(a) of the Bankruptcy Code, thus, subject to a turnover proceeding by virtue of § 542 of the Code and must be turned over to the estate forthwith. While the initially named Defendant does not resist the Trustee's efforts to obtain the funds, the Debtors, as noted, intervened in the adversary proceeding and now contends that the funds held by the company are not properties of the estate by virtue of the exclusionary clause of § 541(c). In the alternative, the Debtors contend that even if the funds are property of the estate, they are exempt by virtue of § 522(b) of the Bankruptcy Code and for this reason, the Trustee, although he may be entitled to obtain the funds from the Company, will not be able to use the same for the benefit of the estate, but the same must be allowed as exempt and turned over to the Debtors.

Based on the contentions advanced by the parties, it is evident that the resolution of this controversy must be resolved by considering the relevant provisions of the Code; that is, § 541(a), which defines what are properties of the estate; the exclusionary clause of § 541(c) which defines certain types of properties excluded from the estate; and, the pertinent provisions of the Code which deal specifically with exemptions.

The Trustee's contention is based on § 541 which defines properties of the estate and in pertinent part provides as follows:

(a) The commencement of a case ... creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate ... notwithstanding any provision—

(A) that restricts or conditions transfers of such interest by the debtor; ...

In opposition, the Debtors contend that the Plan contains a valid anti-alienation clause enforceable under non-bankruptcy law and, therefore, is excluded from the estate. In support of his claim, the Debtor relies on § 541(c)(2) of the Bankruptcy Code which provides as follows:

§ 541(c)(2)

(c)(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that as enforceable under applicable non-bankruptcy law is enforceable in a case under this title.

As noted earlier, this Plan contains an anti-alienation and anti-assignment clause designed to qualify the Profit Sharing Plan as tax exempt under IRC § 401. Both ERISA (Employee Retirement Income Security Act) and IRC § 401 pertaining to qualified pension and profit sharing plans contain nearly identical language prohibiting the alienation or assignment of plan benefits. Thus, at first blush the funds now held by the Company appear to come under the exception set forth in sub-clause (c)(2) of § 541 of the Bankruptcy Code. However, the answer is not that simple and cases dealing with this problem, i.e. the inclusion of ERISA benefits in the bankrupt estate are in conflict.

There are cases which hold that by virtue of § 541(c)(2), the trustee cannot reach the debtor's interest in funds held in an ERISA type plan. *In re Pruitt*, 30 B.R. 330 (Bankr.Colo.1983); *Clotfelter v. CIBA–GEIGY Corp. (In re Threewitt)*, 24 B.R. 927 (D.Kan.1982); *Shults v. Rose's Stores, Inc. (In re Holt)*, 32 B.R. 767, 10 B.C.D. 1267 (Bankr.D.Tenn.1983); *In re Rodgers*, 24 B.R. 181 (D.Ariz.1982). The holdings of these cases are based on a broad expansion of the reach of § 541(c)(2) by encompassing assignment and transfer restrictions recognized in general federal non-bankruptcy law in addition to recognizing the traditional state trust law. In reaching this conclusion, some of these courts noted that the language of § 541(c)(2) on its face is clear and unambiguous and does not contain any reference to the term "spendthrift." Therefore, the subsection should be read to include any and all trusts which bar creditors from reaching the Debtor's interest. Because these courts found that ERISA's transfer restrictions were enforceable under federal non-bankruptcy law, the courts contend that there was no need to consider the local law concerning the validity of the restrictions.

Rejecting this reasoning, the other line of cases held that § 541(c)(2) was intended to protect only a debtor's interest in traditional spendthrift trusts. *Goff v. Taylor (In the Matter of Goff)*, 706 F.2d 574 (5th Cir.1983); *Firestone v. Metropolitan Life Insurance Co. (In re DiPiazza)*, 29 B.R. 916 (Bankr.N.D.Ill.1983); *Samore v. Graham (In re Graham)*, 24 B.R. 305 (Bankr. N.D.Iowa 1982), aff'd 726 F.2d 1268, Bankr.L.Rep. (CCH) ¶ 69,705 at 84,306 (8th Cir.1984). In an extensive discussion on the subject the Court of Appeals for the 5th Circuit in *Goff, supra* analyzed the legislative history and overall congressional scheme in reaching its conclusion concerning the relationship between ERISA and § 541(c)(2). The 5th Circuit determined that the concept of property of the estate under the Code was intended to have a broad scope which would be frustrated if ERISA's assignment and transfer restrictions were applied with a "sweeping brush." *Goff, supra* 787. Furthermore,

that Court found that ERISA did not constitute a federal exemption within the meaning of § 522(b)(2)(A). As a result, the court found it improbable that Congress intended to ambiguously remove ERISA benefits from the reach of creditors through § 541(c)(2) when it clearly could have done so in § 522. Although it would be of little benefit to recount the entire discussion of the legislative history of § 541(c)(2) as set forth in *Goff, supra,* it is sufficient to say that this Court, as was the 5th Circuit, is persuaded that the legislative history reveals that this provision was intended to cover traditional spendthrift trusts.

This Court is inclined to follow the reasoning of the 5th Circuit in *Goff, supra* and reject the holding in *Threewitt, Holt,* and *Pruitt, supra.* Accordingly, the Court is compelled to consider whether this profit sharing and trust agreement would qualify as a spendthrift trust under Florida law and thus, be excepted from the estate pursuant to § 541(c)(2).

■ Spendthrift trusts are designed to provide a fund for the maintenance of the beneficiary while at the same time securing it against the beneficiary's own improvidence and incapacity. *Croom v. Ocala Plumbing & Electric Co.,* 62 Fla. 460, 57 So. 243 (1911). The typical spendthrift trust bars the voluntary or involuntary alienation of the life beneficiary's interest in his right to receive income. *Waterbury v. Munn,* 32 So.2d 603 (Fla.1947). In order to create a spendthrift trust, the settler must clearly manifest his intent to restrain the beneficiary from alienating his interest. Lowell, *Florida Law of Trusts,* § 27–1 (1976). However, where a debtor has the power to terminate the trust or reach the corpus to give him virtually absolute dominion over the trust, a spendthrift clause does not secure the property from the creditors. *Croom, supra; In re Watson,* 13 B.R. 391 (Bankr.M.D.Fla.1981).

■ In the present proceeding, the Debtor has a vested interest in $5,000 and may compel its distribution. This right to receive the $5,000 coupled with the Debtors'

ability to borrow from the trust fund makes it apparent that the Debtor has sufficient control over the funds to remove them from the protection of the spendthrift restrictions.

The Debtors further contend that the spendthrift restrictions are valid despite the power of the Debtor to terminate employment and compel distribution. In support of their proposition, the Debtors rely on *Waterbury,* where there were five beneficiaries three of which were also the trustees. The Florida supreme court in *Waterbury* upheld the spendthrift restrictions even though the trustee had the power to sell the trust corpus and distribute the proceeds.

This Court does not find *Waterbury, supra* controlling under the facts presented in this case. Not all of the beneficiaries in *Waterbury* had the power to terminate the trust or compel the trustee to distribute the corpus. Based on the foregoing, this Court finds that § 541(c)(2) does not except the Debtor's interest in the Plan from the estate.

In the alternative, the Debtors contend that even if the funds in the Plan are estate properties, § 522(b)(2)(A) exempts that property from the estate. That section in pertinent part provides as follows:

§ 522(b)(2)(A)

Notwithstanding Section 541 of this title, an individual debtor may exempt from property of the estate ...

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section ...

The legislative history of the Code lists some exemptions from creditors provided by other federal laws. The list contains the following:

Foreign Service Retirement and Disability payments, 22 U.S.C. § 1104 [section 1104 of Title 22, Foreign Relations and Intercourse];

Social security payments, 42 U.S.C. § 407 [section 407 of Title 42, The Public Health and Welfare];

Injury or death compensation payments from war risk hazards, 42 U.S.C. § 1717 [section 1717 of Title 42];

Wages of fishermen, seamen, and apprentices, 46 U.S.C. 601 [section 601 of Title 46, Shipping];

Civil service retirement benefits, 5 U.S.C. 729, 2265 [sections 729 and 2265 of Title 5, Government Organization and Employees];

Longshoremen's and Harbor Workers' Compensation Act death and disability benefits, 33 U.S.C. 916 [section 916 of Title 33, Navigation and Navigable Waters];

Railroad Retirement Act annuities and pensions, 45 U.S.C. 228(L) [former section 228(1) of Title 45, Railroads];

Veterans benefits, 45 U.S.C. 352(E) [section 352(e) of Title 45];

Special pensions paid to winners of the Congressional Medal of Honor, 38 U.S.C. 3101 [section 3101 of Title 38, Veterans Benefits]; and

Federal homestead lands on debts contracted before issuance of the patent, 43 U.S.C. 175 [section 175 of Title 43, Public Lands].

S.Rep. No. 95–989, 95th Cong., 2d Sess. 75, reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 5861; H.Rep. No. 95–595, 95th Cong., 2d Sess. 360 (1977); reprinted in 1978, U.S.Code Cong. & Ad.News 5787, 5963, 6316.

The Courts have split in deciding whether 29 U.S.C. § 1056(d)(1) (ERISA) and 26 U.S.C. § 401(a)(3) constitute the type of federal exemption to which § 522(b)(2)(A) of the Code refers.

The Debtor relies on *Barr v. Hinshaw (In re Hinshaw)*, 23 B.R. 233 (Bankr.D. Kansas 1982), for the proposition that ERISA qualified pension plans are exempt under § 522(b)(2)(A). The *Hinshaw, supra* court undertook an analysis of the statutory provisions cited by Congress and found that the similarity between the provisions of those statutes and ERISA and 26 U.S.C. § 401(a)(3) with its accompanying Treasury Regulations, supported the conclusion that the scope of § 522(b)(2)(A) was intended to include ERISA type plans. *Hinshaw, supra* at 235.

In contrast, the courts in *Goff,* and *Graham,* reached an opposite result from that in *Hinshaw* and held that plans qualifying under 29 U.S.C. § 1056(d)(1) and 26 U.S.C. § 401(a)(13) were not exempt under § 522(b)(2)(A) of the Code. These courts noted that ERISA was enacted prior to the Code yet Congress failed to include these statutes in the illustrative list. Furthermore, each of the listed exempt statutes directly precluded all benefits from alienation or assignment while ERISA and 26 U.S.C. § 401(a)(13) prohibit alienation merely as a condition for obtaining qualified tax statutes. *Graham, supra* at 312; *Goff, supra* at 585. Evaluating the issue and the applicable authority, this Court reaches the conclusion that tax qualified plans such as the one presently before this Court were not intended to fall within the purview of § 522(b)(2)(A).

In light of the foregoing, this Court finds that the Debtor's interest in the Plan shall be included in the estate and does not qualify as exempt pursuant to § 522(b)(2)(A).

A separate final judgment will be entered in accordance with the foregoing.