In re John M. MONAHAN, Debtor.

Bankruptcy No. 86–01460–BKC–SMW.

United States Bankruptcy Court,
S.D. Florida.

Jan. 23, 1987.

---

**998**

Stormie Stafford, Miami, Fla., for debtor.

Steven H. Friedman, Miami, Fla., for creditor Michael Zemon.

Alexander DeMarco, Trustee.

### ORDER ON OBJECTION TO CLAIMED EXEMPTION

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come before the Court on September 25, 1986, upon Creditor Michael Zemon's Objection to Claimed Exemption made pursuant to 11 U.S.C. § 541(c)(2) and Bankruptcy Rule 4003 and the Court having examined the evidence presented, considered the arguments of counsel and being otherwise fully advised in the premises, does hereby find the following:

The Debtor, John M. Monahan filed a voluntary petition in bankruptcy pursuant to Chapter 7 of the Bankruptcy Code on May 21, 1986. The Debtor was employed by Bill Ussery Motors, Inc. from September 1, 1975, until June 9, 1986, when he was involuntarily terminated. While in Bill Ussery Motors' employ, the Debtor participated in a profit sharing and pension plan ("the Plan") which was established on December 1, 1969; reinstated on September 21, 1976, and December 31, 1984, and; amended and reinstated as of January 1, 1985. The Debtor's entire interest in the Plan was rolled over upon each reinstatement and amendment, but the Debtor received no distributions because of the rollovers.

The Debtor, pursuant to 11 U.S.C. § 541(c)(2), timely claimed his entire interest in the Plan as exempt in his statements and schedules. The Debtor's accrued benefit under the Plan totals approximately $51,000.00. Through elective contributions from his salary, the Debtor contributed $6,484.55 of the $51,000.00 in accrued benefit. The remaining funds were contributions by the employer, Bill Ussery Motors. Plan participants may make one of two types of contributions: participant nondeductible voluntary contributions (periodic lump sum investments by the employee from personal funds) and elective contributions (pre-tax deductions from the employee's salary with a maximum deduction of 9 per cent of the salary). An employee may, according to section 4.06 of the Plan, by prior written notice to the trustee withdraw his accrued benefit derived from his nondeductible voluntary contribution. Since the Debtor made elective contributions, this section is inapplicable to his elective contributed interest. Section 4.06 also specifically prohibits an employee's withdrawal of any rollover contribution. It therefore appears that the debtor has no unfettered discretionary power to compel distribution of the funds in the Plan.

The Plan was established pursuant to the Employment Security Act of 1974 (ERISA) and was designed to qualify under 26 I.R.S. § 401(a) and § 501(a). The Plan includes restraints on alienation and assignment, certain requirements concerning minimum and maximum contributions and a method of payment after retirement or upon the occurrence of certain events. The amount of accrued benefit the employee is entitled to receive at retirement is determined both by contributions made on his behalf and length of service. According to the Plan's terms, 80% of the debtor's accrued benefit is nonforfeitable and will be distributed to him when one of several contingencies occur.

The employee has a right to distribution of his interest only upon reaching retirement age, becoming unemployed through disability or upon his death. Section 5.01 of the Plan defines normal retirement age as the later of age 65 or ten years of Plan participation. Section 6.01 of the Plan provides for distribution at the later of two dates: retirement age or termination of employment. Distribution at any other time than death, disability or age 65 must be authorized by an Advisory Committee and the trustee of the Plan who control all investments and distributions.

The Advisory Committee and the trustees have the sole discretion to review and grant or deny employee requests for distribution through loans against the employee's interest in the Plan or for distribution when there is a termination of employment prior to age 65. In the event of extreme financial hardship, the employee, "by making a written request to the Advisory Committee, may withdraw all or any part of the value of his Accrued Benefit derived from his elective contributions...." Financial hardship is defined in section 4.07 as an immediate and heavy financial need, such as: a college education, purchase of a principal residence, or major medical expenses. The debtor has not requested a distribution through any of the above methods. However, the issue in this case is not whether there has been an actual distribution, but whether the debtor has the absolute dominion and control to obtain an immediate distribution if he were interested in doing so.

Under 11 U.S.C. § 541 all legal or equitable interest of a debtor in property at the commencement of bankruptcy becomes the property of the estate. Included within this broad definition is any interest of the debtor in property "notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law that restricts or conditions transfers of such an interest by the debtor or that is conditioned on the insolvency or financial condition of the debtor...." 11 U.S.C. § 541(c)(1)(A) and (B). The only situation where a restriction on property transfers will be honored is when it is "a restriction on the transfer of beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law...." 11 U.S.C. § 541(c)(2).

The phrase "applicable nonbankruptcy law", as found in 11 U.S.C. § 541(c)(2), encompasses only state spendthrift trust law. *See Lichstrahl v. Bankers Trust (In re Lichstrahl)*, 750 F.2d 1488, 1490 (11th Cir.1985) and *Goff v. Taylor (In the Matter of Goff)*, 706 F.2d 574, 577 (5th Cir.1983). In *Croom v. Ocala Plumbing & Electric Co.*, 62 Fla. 460, 57 So. 243 (1911) the Florida Supreme Court defined a spendthrift trust as a trust "created with a view

of providing a fund for the maintenance of another, and at the same time securing it against his own improvidence or incapacity for self-protection." *Croom*, 62 Fla. at 465, 57 So. at 244. The *Croom* court further held that a qualifying spendthrift trust in Florida generally contains clauses forbidding alienation of the trust by the beneficiary or attachment by creditors. *See Croom*, 62 Fla. at 465, 57 So. at 244. In *Croom*, the court found that where a beneficiary has such "absolute dominion over the property as to vest in them ... absolute title ..." no spendthrift trust may exist under Florida law. *Croom*, 62 Fla. at 466, 57 So. at 244–45.

Applying the reasoning in *Croom*, the *Lichstrahl* court found an ERISA pension plan to not qualify as a spendthrift trust under Florida law because, although the plan contained anti-alienation/assignment clauses, the employee exercised "absolute dominion" over the property of the trust by being authorized to act as both settlor, as an agent, and as beneficiary. *Lichstrahl*, 750 F.2d at 1490. The debtor in the case at bar is not endowed by this Plan with such absolute powers of control as found in the *Lichstrahl* facts since Bill Ussery Motors, through the Advisory Committee and the trustees, acts as the settlor. However, the question still remains: how much dominion and control by the beneficiary is necessary to invalidate a spendthrift trust under Florida law?

The following 11th circuit bankruptcy court cases have explored the answer to this question over the last several years. In *Nixon v. P.J. Pedone & Co. (In the Matter of Nichols )*, 42 B.R. 772 (Bankr.M. D.Fla.1984) the court held that where a profit sharing and trust plan contains an anti-alienation clause and an anti-creditor attachment clause, but allows the participating employee to borrow funds from the trust and to compel distribution of his vested interest, the plan is not a spendthrift trust within Florida law and therefore is includable as property of the estate under 11 U.S.C. § 541. The *Nixon* court found that the debtor's right to receive his vested interest in the plan plus his ability to bor-

row from the trust constituted sufficient dominion and control over the trust funds to prevent it from being a spendthrift trust.

In another case this court found an ERISA plan that permitted the employer "to terminate the plan at any time or had authority to undertake a partial termination for individual participants" constituted absolute dominion and control by the beneficiaries/employees who were also the sole stockholders, directors and officers of the employer. *See In re Gillett*, 46 B.R. 642, 644 (Bankr.S.D.Fla.1985). The *Gillett* court held that the ERISA plan was not a spendthrift trust under Florida law and the funds were includable in the debtors' estate.

Finally, one of the most recent cases on the subject is *Gennet v. ICMA Retirement Corp. (In re Forbes )* 65 B.R. 58 (Bankr.S. D.Fla.1986) where funds in a Deferred Compensation Plan were excepted from being property of the estate under 11 U.S.C. § 541(c)(2) because the only absolute dominion the beneficiary had over the funds was that the Plan could be terminated if he elected to quit his job. The *Gennet* court viewed employment termination as a sufficient restraint upon withdrawal of the employee's benefits to prevent such an act from constituting absolute dominion over the funds distribution. *Gennet*, 65 B.R. at 59.

 Applying the above cases to the case at bar, the Debtor does not have absolute dominion and control over all of the funds in the trust so as to include his entire interest in the Plan in the bankruptcy estate. Only the funds the Debtor contributed through his elective contributions are includable as property of the estate. The Debtor may access these funds merely by showing an immediate and severe hardship to the Advisory Committee. Unlike the *Gennet* case where the employee would have to take the affirmative step of quitting his job to obtain the funds, in this case the Debtor is presently in the throes of bankruptcy where a more profound hardship would be difficult to imagine. It appears to be a mere formality for the debtor to request and obtain his elective contribution.

 However, the funds contributed by Bill Ussery Motors, Inc. are not within the dominion and control of the debtor and therefore are within the protection of Florida's spendthrift trust laws. The Debtor cannot compel distribution of those funds unless his employment is terminated by disability, death or voluntary retirement at age 65. The Plan does permit the Debtor to request distribution upon termination prior to these events or to request a loan against the monies in the account, but it is within the sole discretion of the Advisory Committee to grant or deny the requests. Given the present financial condition of the debtor, it is unlikely that such a loan would be granted. This case is unlike *Nichols* where the beneficiary could compel distribution of his vested interest when his employment was terminated whether or not he had reached retirement age *plus* he could take a loan out against his interest in the plan. The Debtor in the present case cannot compel distribution by any means, but must totally defer to the Advisory Committee's and the trustees' decision to distribute employer contributions. Since the Debtor does not have absolute dominion and control over the employer contributions, those funds in the Plan constitute a spendthrift trust. Based upon the foregoing discussion, it is:

ORDERED and ADJUDGED that the $6,484.55 of elective contribution in the Plan be put into the bankruptcy estate as property of the estate pursuant to 11 U.S.C. § 541 with the remaining funds in the Plan being exempt from property of the estate under 11 U.S.C. § 541(c)(2) because the funds constitute a spendthrift trust under applicable nonbankruptcy law.