In re Kenneth Ruford ALLAN, Debtor.

Dr. Robert Shuman and Allan & Harper Custom Homes, LLC, Movants

v.

Kenneth Ruford Allan, Respondent.

No. 03–30161.

United States Bankruptcy Court, S.D. Georgia, Dublin Division.

March 31, 2009.

630

Jesse C. Stone, Jon A. Levis, Merrill & Stone, LLC, Swainsboro, GA, for Debtor.

### ORDER

SUSAN D. BARRETT, Bankruptcy Judge.

Before the Court is a Motion to Modify Kenneth Ruford Allan's ("Debtor") Chapter 13 Plan After Confirmation to pay a 100% dividend to unsecured creditors filed by Dr. Robert Shuman and Allan & Harper Custom Homes, LLC. (collectively, "Movants"). The modification is based upon a beneficial interest in a trust created by Debtor's father. Also, before the Court is Movants' oral motion to dismiss the case for a purported lack of good faith because of Debtor's failure to disclose the trust and a series of post-confirmation transactions. These are core proceedings under 28 U.S.C. § 157(b)(2)(A), (L), and (O). The Court has jurisdiction pursuant to 28 U.S.C. § 1334. For the foregoing reasons, Movants' motions are denied.

### FINDINGS OF FACT

On March 21, 2003, Debtor filed a chapter 13 bankruptcy petition.[1] The case was confirmed in October of 2003 with Debtor paying $670.00 per month for sixty (60) months with a dividend to unsecured creditors of not less than ten percent. (Report on Confirmation, Dckt. No. 64.) The order confirming the plan states "Debtor shall

---

1. This case was filed prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and, unless expressly noted otherwise, all references to the Bankruptcy Code are to the provisions effective on the date of the petition.

not incur any indebtedness without approval of the Court or the [chapter 13] Trustee." (Order, Dckt. No. 63, ¶ 4.)

In March of 2004, a year after the bankruptcy filing, Debtor's father informed Debtor he was doing some estate planning. (Tr. p. 44.) At the request of his father, Debtor met with his father's attorney and told him about his marital problems and his pending bankruptcy case. (Tr. pp. 44, 45.) Sometime after the meeting, Debtor learned they were going to form a trust and Debtor knew what assets would be placed in the trust. (Tr. pp. 45, 54.) Debtor was adamant he had no control over the establishment or operation of the trust. (Tr. pp. 45, 51.) The Kenneth R. Allan Irrevocable Trust ("Trust") was created on October 12, 2004, approximately three weeks before the death of Debtor's father. (Tr. p. 45, Ex. M–12.)

The Trust is an inter vivos trust established by Debtor's father for the benefit of Debtor, or his lineal descendants if Debtor dies before receiving a complete distribution, but Debtor is to receive no income prior to the termination of the trust. (Trust, Ex. M–12, p. 1.) Debtor's brother, Charles D. Allan ("Mr. Allan"), is the trustee. (Ex. M–12, p. 1.) None of Debtor's property is included in the Trust. (Tr. p. 62.) The Trust contains a spendthrift clause which states: "[T]he interests of the beneficiaries hereunder in the income and principal of this trust estate shall not be subject to anticipation or to voluntary or involuntary alienation." (Ex. M–12, p. 3.) The Trust will terminate upon "the lesser of six years from the date of inception or at such point as the Trustee is satisfied there are no pending, unsettled or outstanding actions or causes of action against [Debtor], or his estate." (Ex. M–12, p. 1.)

Six years from the date of inception is October 2010.

Debtor testified he did not amend his bankruptcy schedules to disclose the existence of the Trust because he was told it was not his asset and did not belong to him. (Tr. p. 46.) Nevertheless, Debtor did pay taxes in connection with the Trust for the 2005, 2006 and 2007 tax years. (Tr. p. 87.) The Trust owns a 1/3 interest in Allan Farms, LLC,[2] and these taxes were incurred when the trustee, Mr. Allan, liquidated some of Allan Farms LLC's property in order to care for their elderly mother. (Tr. pp. 72, 73 and 86.) Mr. Allan offered the following explanation:

> [i]n [each of these years], there was … capital gain … from Allan Farms to Kenneth R. Allan Trust. In lieu of passing this [long term capital gain] through to [the] trustee and filing a separate tax return and then a K–1 for the trust to the [Debtor] for the very same thing, I just simply carried it straight through to [Debtor]. Realizing today, I probably would have … just [issued] two K–1s.

(Ex. M–11; Tr. pp. 80; *See also* Tr. p. 87.) Mr. Allan and Debtor provided uncontroverted testimony the Trust has made no distributions to Debtor. (Tr. pp. 58, 59 and 85.)

On October 25, 2007, Debtor filed a Motion to Incur Debt to purchase a house at $50,000.00. (Dckt. No. 86.) The chapter 13 Trustee objected due to a delinquency in plan payments. (Dckt. No. 87.) At the hearing on November 20, 2007, the chapter 13 Trustee withdrew his objection, as Debtor had cured his delinquency, and an order was entered granting Debtor's motion allowing monthly mortgage payments not to exceed $389.40 for the purchase of the home. (Order, Dckt. No. 93.)

---

**2.** There are three surviving Allan brothers— the Debtor, the trustee, and a third brother. Debtor's brothers each own a 1/3 interest in Allan Farms, LLC.

At the hearing on Movants' proposed modification, Debtor disclosed several previously undisclosed post-confirmation financial transactions. The following chart details these transactions along with several important dates in Debtor's chapter 13:

| Date | Various Financial Transactions and Other Matters |
|---|---|
| 3/21/2003 | Debtor files his chapter 13 bankruptcy petition. |
| 10/2003 | Confirmation of Debtor's chapter 13 plan. |
| 10/12/2004 | Kenneth R. Allan Irrevocable Trust of 2004 formed. |
| 11/2004 | Debtor received a "couple" of watches, some furniture and a gun through an informal distribution of some of his deceased father's personal effects. These items have an estimated value of less than $500.00. (Tr. p. 52.) |
| 7/3/2006 | Debtor deposited $1,900.00. A portion of this money was from Debtor cashing in his life insurance policy. (Tr. p. 38, 39, Ex. M–7.) Debtor is not sure of the exact cash value of the policy, but he thinks it was $900.00 and he deposited an additional $1,000.00 with this sum. (Tr. pp. 38, 39, Ex. M–7.) |
| 11/6/2006 | Debtor received $5,000.00 from his ex-wife as part of a property settlement. (Tr. p. 40, Ex. M–8) |
| 1/2007 | A $1,500.00 loan is made by Terry Jones to Debtor. (Tr. p. 55, Ex. M–14.) Debtor used these funds to hire a lawyer for his divorce mediation and has repaid this loan. (Tr. pp. 55, 56, 63 and 64.) |
| 6/2007 | A $2,500.00 loan is made by Allan Farms, LLC to Debtor. (Tr. p. 30, Ex. M–4). This loan was to help tide Debtor over while he waited for a paycheck when he changed jobs and is not yet due and payable. (Tr. pp. 61, 62.) |
| 09/2007 11/2007 | Debtor received a total of $6,500.00 from his son (Tr. p. 30). At the hearing, Debtor testified neither he nor his son considered this to be a loan, although Debtor intends to repay it. (Tr. pp. 30, 31.) |
| 2/21/2008 | Movants filed this motion to modify Debtor's chapter 13 plan. |
| 3/5/2008 | Debtor received $5,000.00 from his ex-wife as part of a property settlement. (Tr. pp. 34, 41, Ex. M–6.) |
| 5/9/2008 | $16,400.00 from Debtor's girlfriend is deposited into Debtor's checking account. (Tr. pp. 27, 28, Ex. M–2.) According to Debtor, these funds were used to pay his federal income tax liability. (Tr. pp. 27, 28, Ex. M–2.) |
| 5/14/2008 | Debtor paid in full the balance of his confirmed chapter 13 plan. |
| 6/2008 | Debtor paid $1,300.00 to rent a beach house from Mr. Roger Lemons. (Tr. pp. 28, 30, Ex. M–1.) |
| 6/2008 | Debtor repaid a $6,900.00 second mortgage on his home to Roger Lemons. (Tr. p. 29, Ex. M–2, Check Nos. 1177 and 1180.) |
| 6/2008 | Debtor paid Jack and Patricia Shuman $6,500.00. (Tr. p. 26, Ex. M–1.) |
| 7/2008 | Debtor loaned Mr. Roger Lemons $6,000.00 because Mr. Lemons had loaned money to Debtor in the past. (Tr. p. 29, Ex. M–3.) |
| | Without Court approval and contrary to the terms of his plan, Debtor allowed his employer to garnish his wages to repay a pre-petition debt in the amount of $13,000.00. (Tr. pp. 68, 70.) The exact date(s) of this repayment is unclear and it may have been pre- and/or post-confirmation. |
| 6/3/2008 | As part of the mediated divorce settlement with his ex-wife, Debtor received the following: in June 3, 2008, Debtor received $49,328.10 from his ex-wife's 401(k) pursuant to a QDRO. (Tr. pp. 27, 34 and 35, Ex. M–2.) Apparently, Debtor was in a financial bind after he separated from his wife and he did not have taxes withheld from his pay checks so he could afford to make his child support and bankruptcy payments. (Tr. p. 61.) Debtor testified $25,000.00–$30,000.00 of this money will be used to pay unpaid income tax. (Tr. p. 61.) |

With this background, Movants assert two basic arguments. First, Movants filed a motion to modify Debtor's chapter 13 plan to pay his unsecured creditors in full. Movants argue "[w]hile the trust at issue has a spendthrift clause that would normally operate to exclude it from the estate, the fraudulent purpose of the trust, as well as principles of equity require inclusion of the trust in the bankruptcy estate." (Dckt. No. 127, p. 1.) If the Court fails to invalidate the trust for fraud, Movants argue Debtor should be equitably estopped from asserting the Trust is valid. Second, Movants argue the discovery of the Trust and these undisclosed financial transactions shows Debtor's bad faith and dictates the dismissal of Debtor's bankruptcy.

Conversely, Debtor argues the Trust is a valid spendthrift trust and not part of his bankruptcy estate. Debtor further contends the undisclosed financial transactions do not require dismissal of his bankruptcy.

### CONCLUSIONS OF LAW

#### Motion to Modify Chapter 13 Plan.

Movants argue Debtor's fraud invalidates the spendthrift trust and move to modify Debtor's plan to pay unsecured creditors in full. Conversely, Debtor ar-

gues the Trust is a valid spendthrift trust excluded from his bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2).[3] Section 541(c)(2) excludes property from the bankruptcy estate where there is a restriction on transfer of a debtor's beneficial interest in the trust that is enforceable under applicable non-bankruptcy law. 11 U.S.C. § 541(c)(2).[4] In the current case, the parties acknowledge the Trust contains a spendthrift clause which states: "[T]he interests of the beneficiaries hereunder in the income and principal of this trust estate shall not be subject to anticipation or to voluntary or involuntary alienation." (Ex. M–12, p. 3.)

The parties further agree Florida is the applicable non-bankruptcy law.[5] Under Florida law, "[a] spendthrift trust is one that is created with the view of providing a fund for the maintenance of another, and at the same time securing it against his own improvidence or incapacity for self protection." *Waterbury v. Munn*, 159 Fla. 754, 32 So.2d 603, 605 (1947). Florida courts have long recognized and enforced valid spendthrift trusts, provided the beneficiaries cannot exercise control or dominion over the assets. *In re Brown*, 303 F.3d 1261, 1265–66 (11th Cir.2002); *Waterbury*, 32 So.2d at 605. In the current case,

**3.** Movants do not make any claim the Trust is property of the estate under 11 U.S.C. § 541(a)(5). (Brief, Dckt. No. 130, n. 5.)

**4.** 11 U.S.C. § 541(c)(2) states:
A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

**5.** The Trust states, "[t]he State of Florida is hereby designated as the situs of the Trust herein created, and all questions pertaining to the validity and construction of this Agreement or the administration hereunder shall be determined in accordance with the laws of Florida, regardless of the jurisdiction in

which this Trust may at any time be administered." (Ex. M–12, p. 4); *See also In re Brown*, 303 F.3d 1261 (11th Cir.2002) *citing Lichstrahl v. Bankers Trust (In re Lichstrahl)*, 750 F.2d 1488, 1490 (11th Cir.1985) (stating the term "applicable nonbankruptcy law" in 11 U.S.C. § 541(c)(2) refers to state spendthrift trust law), *abrogated on other grounds* by *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519, (1992); *In re Newman*, 903 F.2d 1150, 1152 (7th Cir.1990) (noting Missouri law would be the appropriate legal standard in determining validity of trust created under Missouri law).

the Trust contains a spendthrift clause which states: "The interests of the beneficiaries hereunder in the income and principal of this trust estate shall not be subject to anticipation or to voluntary or involuntary alienation." (Ex. M–12, p. 3.) Movants acknowledge this is a valid spendthrift provision, but argue, "[w]hile the trust at issue has a spendthrift clause that would normally operate to exclude it from the estate, the fraudulent purpose of the trust, as well as principles of equity require inclusion of the trust in the bankruptcy estate." (Dckt. No. 127, p. 1.)

Under Florida law, fraudulent transfers are void. Fla. Stat. § 726.105. Florida law provides, "(1) [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor...." Fla. Stat. § 726.105. In determining whether actual intent to hinder, delay, or defraud exists, consideration may be given, among other factors, to whether:

(a) The transfer or obligation was to an insider.

(b) The debtor retained possession or control of the property transferred after the transfer.

(c) The transfer or obligation was disclosed or concealed.

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(e) The transfer was of substantially all the debtor's assets.

(f) The debtor absconded.

(g) The debtor removed or concealed assets.

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Section 726.105(2).

Under Florida law, movants bear the burden of proof to show such fraud by a preponderance of the evidence. *Mejia v. Ruiz*, 985 So.2d 1109, 1113 (Fla.App.2008); *See also Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)(stating, "because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless 'particularly important individual interests or rights are at stake.' ")

"[B]ecause of the difficulty of proving actual intent to defraud creditors, section 726.105(2) provides that fraudulent intent maybe presumed from evidence of 'badges of fraud.' " *Id. citing Beal Bank SSB v. Almand & Assocs.*, 780 So.2d 45, 60 (Fla.2001). The "badges of fraud" offered by Movants include the fact that: Debtor met with his father and his father's attorney to discuss Debtor's marital difficulties and his pending bankruptcy; Debtor was in bankruptcy when the Trust was created; Debtor's father and Debtor's father's attorney knew of the bankruptcy when the Trust was established; and the Trust ter-

minates upon the earlier of "six years from the date of inception or at such point as the Trustee is satisfied there are no pending, unsettled or outstanding actions or causes of action against [Debtor] or his estate." (Ex. M–12, p. 1.)

The fact the Trust was created with knowledge of the bankruptcy, does not invalidate the Trust. Debtor's father was free to dispose of his property as he saw fit and a spendthrift trust is a valid, legal way to dispose of his property. The whole purpose of a spendthrift trust is to protect the beneficiary from his own improvidence. *Waterbury v. Munn*, 32 So.2d at 605. Debtor testified his father approached him in March 2004 about "doing some planning." (Tr. p. 44.) At his father's request, Debtor met with his father's counsel and discussed his personal situation regarding his marital difficulties and his pending bankruptcy. At that time, Debtor did not know a trust was going to be created and did not have anything to do with the specific terms of the trust. (Tr. pp. 45, 51.) Later, "[Debtor] knew what assets [his father] said he was going to put in trust," but this does not establish Debtor in any way had control or dominion over this father or the formation of the Trust. (Tr. p. 45.) Both Debtor and his brother testified to the strong and determined nature of their father. (Tr. pp. 53, 84.) Debtor, as requested by his father, told his father's attorney about his personal situations, but this does not amount to fraud on the part of the Debtor. Debtor's father was not in bankruptcy nor insolvent when he created the Trust. He was elderly and terminally ill,[6] and trying to control the use of his property after his death and complete his estate planning to provide for his wife[7]

and his lineal descendants, namely his three sons and grandchildren.

Pursuant to the terms of a testamentary trust, the debtor in the Supreme Court case of *Nichols v. Eaton* was entitled to one-fourth of the trust income; provided however if he filed for bankruptcy, his interest in the trust terminated and went to his wife and children. *Nichols v. Eaton*, 91 U.S. 716, 722, 23 L.Ed. 254 (1875). The clear intent of the testator was to prevent the trust from becoming part of the beneficiary's bankruptcy estate. *Id.* The Supreme Court did not find this intention fraudulent. The Court stated creditors could not be frustrated or defrauded because they could not have relied upon this money when extending credit. *Id.* at 726. The Court stated:

> the [creditor] knows, that, in creating a debt with such person, he had no right to look to that income as a means of discharging it. He is neither misled nor defrauded when the object of the testator is carried out by excluding him from any benefit of such a devise.
>
> Nor do we see any reason, in the recognized nature and tenure of property and its transfer by will, why a testator who *gives,* who gives without any pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use, of uninterrupted benefit of the gift, during the life of the donee. Why a parent, or one who loves another, and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life, the vicissitudes of fortune, and even his own improvidence, or incapacity for self-protec-

---

**6.** There is some confusion as to when Debtor's father actually learned of his terminal illness; however, it is clear he wanted to get his estate in order. The actual timing of his

learning of his illness does not affect this opinion.

**7.** His wife has a mental illness and is unable to care or provide for herself. (Tr. p. 63.)

tion, should not be permitted to do so, is not readily perceived.

*Nichols*, 91 U.S. at 726–727 (emphasis in original).

In another case, the settlor of the trust directed the corpus not become part of the beneficiary's estate until he reached age 50 and the debtor and his creditors be prevented from anticipating the debtor's interest in the corpus until that time. *Newman*, 903 F.2d at 1152. The *Newman* debtor was 45 years old when he filed for bankruptcy and the chapter 7 trustee wanted the present value of the trust included in debtor's bankruptcy estate. The year before the trust was to terminate, the Seventh Circuit entered an order rejecting this argument stating, "[T]he point of a spendthrift trust ... is to prevent exactly this sort of anticipation by beneficiaries and their creditors. The Bankruptcy Code is designed to further that goal." *In re Newman*, 903 F.2d at 1153; *accord Nichols v. Eaton*, 91 U.S. 716, 23 L.Ed. 254 (1875).

Movants urge the Court to adopt the analysis set forth in *Mann v. Kreiss (In re Kreiss)*, 72 B.R. 933 (Bankr.E.D.N.Y.1987) where the court listed three factors creditors must prove to invalidate a spendthrift trust: 1) the trustees were under the debtor's dominion and control; 2) debtor knowingly and wrongfully concealed assets of the estate; and 3) there was a plot entered into to circumvent the provisions of the Bankruptcy Code. *Kreiss*, 72 B.R. at 940.[8]

Applying this test, Movants failed to carry their burden. As far as dominion and control, Debtor and Mr. Allan testified to how strong minded and determined their father was during his life, and in preparing for his death. No evidence indicated Debtor exercised dominion or control over the settlor or the trustee of the Trust. Debtor has received no income or principal from the Trust and he has no power over the Trust or the trustee. Merely advising Debtor's father and father's attorney of his personal situation does not constitute dominion and control. As in *Kreiss*, the Trust is not a "sham" in which Debtor controls the assets though manipulation of his father or the trustee. *Kreiss*, 72 B.R. at 940.

■■ As to the second factor, I find Debtor did not knowingly and wrongfully conceal the Trust. Debtor admits he did not amend his schedules to include the Trust because he did not think the Trust belonged to him. Debtor did not receive, nor was he entitled to receive, any income or principal distributions from the Trust. None of Debtor's property was included in the Trust. Under § 541(c)(2) valid spendthrift trusts are not property of the bankruptcy estate and therefore Debtor's conclusion, in this regard does not rise to the level of knowingly and wrongfully concealing assets. Even assuming Debtor should have disclosed the Trust, given my conclusion that it is not property of the estate, I do not find this failure to disclose to be bad faith sufficient to dismiss his bankruptcy.

As to the final element of a plot to circumvent the Bankruptcy Code, the evidence shows Debtor met with his father and his father's counsel and told them about his marital and financial problems; however, this does not rise to the level of a

---

**8.** In *Kreiss* the court cites clear and convincing as the standard of proof necessary to show dominion and control and preponderance of the evidence standard to show wrongful and knowing concealment. *Kreiss* 72 B.R. at 940. However, *Kreiss* was decided before *Grogan v. Garner* and therefore this Court finds the preponderance of the evidence standard is the correct standard. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

plot to circumvent the Bankruptcy Code. Indeed, the Bankruptcy Code allows for the beneficial interest in a spendthrift trust to be excluded from property of the estate in all cases under title 11. *See* 11 U.S.C. § 541(c)(2). While the *Nichols* case and *Newman* case involve trusts created pre-petition, § 541(c)(2) does not require the beneficial interest be created pre-petition. The fact that the Trust was created post-petition does not alter this opinion. Debtor's father was not in bankruptcy or insolvent when he established the Trust. He was dying and trying to get his affairs in order. He did not want his assets to go to his son's creditors, rather he wanted them to go to his wife and lineal descendants. This does not show a plot to circumvent the Bankruptcy Code as contemplated by *In re Kreiss.*

For the same reasons, the fact the Trust will terminate upon "the lesser of six years from the date of inception or at such point as the Trustee is satisfied there are no pending, unsettled or outstanding actions or causes of action against [Debtor], or his estate" does not show a plot to circumvent the Bankruptcy Code as contemplated by *In re Kreiss.* (Ex. M–12, p. 1.) Movants argue the established duration of the Trust

clearly shows an attempt to circumvent the Bankruptcy Code since chapter 13 plans cannot extend beyond five years. *See* 11 U.S.C. § 1329(c).[9] As previously discussed, Debtor's father exercised control and dominion over his own affairs and assets and he placed a portion of his assets in a valid spendthrift trust for the benefit of his son or his son's lineal descendants in event of Debtor's death. *See Newman,* 903 F.2d at 1153 (excluding from property of the estate debtor's interest in a spendthrift trust subject to terminate just after bankruptcy case would be concluded). I do not find such conduct to be part of a plot between Debtor and his father to improperly circumvent the provisions of the Bankruptcy Code. Furthermore, given the particular facts of this case, to the extent a "plot" existed, I do not find it cause to invalidate the spendthrift nature of the Trust.

■ For these reasons, I find the Trust is a valid spendthrift trust under Florida law, and excluded from Debtor's bankruptcy estate. I further find Movants failed to carry their burden of proof on the issue of fraud, and therefore deny Movants' motion to modify Debtor's plan.[10]

---

9. 11 U.S.C. § 1329(c) states in pertinent part: A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

10. Debtor also argued Movants motion must be denied as untimely. A modification of plan after confirmation is governed by 11 U.S.C. § 1329 which states:
(a) *At any time after confirmation of the plan but before the completion of payments under such plan,* the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
. . . .
(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but *the court may not approve a period that expires after five years after such time.*
11 U.S.C. § 1329 (emphasis added). In this case, the motion to modify was filed before the completion of payments but the hearing was not held until after Debtor made his final payment to the chapter 13 Trustee. The motion was filed on February 21, 2008. Debtor made his last payment to the chapter 13 Trustee on May 14, 2008. After several continu-

### Equitable Estoppel.

 Movants further argue since Debtor failed to disclose the Trust and abide by the bankruptcy rules, he should be equitably estopped from asserting the validity of the spendthrift provision. (Dckt. No. 130, pp. 9, 10.) "Under the doctrine of equitable estoppel a party with full knowledge of the facts, who accepts the benefits of a transaction, contract, statute, regulation or order, may not subsequently take an inconsistent position to avoid the corresponding obligations or effects." *DeShonq v. Seaboard Coast Line R. Co.,* 737 F.2d 1520, 1522 (11th Cir.1984). As discussed previously, I find the Trust is not property of Debtor's bankruptcy estate and while Debtor arguably should have disclosed its existence, I do not find he should be equitably estopped from asserting his § 541(c)(2) argument.

 Further, Movants argue Debtor should be estopped from asserting he has no ownership in the Trust since he paid taxes on it. (Dckt. No. 127, pp. 11, 12.) However, Debtor and Mr. Allan testified credibly that Debtor has not received income or distributions from the Trust. The Trust owns a one-third interest in Allan Farms, LLC. Mr. Allan explained these taxes were incurred as a result of the trustee's decision to sell some assets of Allan Farms, LLC to care for their mother. The Trust had no income from which to pay these taxes. Even if there was income available, Debtor has no access or control over any such funds, or the decision to sell any of the assets. (Tr. p. 82.) The payment of these taxes, does not prevent Debtor from arguing the Trust is excluded from his bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). For these reasons, I find the doctrine of equitable estoppel does not invalidate the spendthrift trust.

### Dismissal.

 Pursuant to 11 U.S.C. § 1307(c),[11] upon the request of a party in interest or the United States Trustee after notice and a hearing, a court may dismiss a case under this chapter "for cause." Movants argued at the beginning of the hearing Debtor should not be allowed a discharge since he failed to disclose the Trust. Movants reasserted the argument at the conclusion of the hearing, arguing the failure to disclose the Trust along with various other undisclosed financial transactions dictated Debtor's bankruptcy be dismissed if Debtor failed to pay all his unsecured creditors in full.[12] Debtor argues he had

---

ances to allow Movants to conduct discovery, the hearing was held on September 16, 2008, after the completion of the plan payments. Under § 1329 a modification after confirmation may be done any time after confirmation of the plan but before the completion of payments under such plan. 11 U.S.C. § 1329(a). Debtor contends the motion is untimely because Debtor has now completed his payments under the plan.

This issue was addressed by the Fifth Circuit in *In re Meza,* 467 F.3d 874, 880 (5th Cir.2006), where the court held a motion to modify a confirmed chapter 13 plan was timely when it was filed before the completion of the payments even though the hearing was not held until after the last payment was paid.

*Id.* Recognizing *Meza,* the Court has considered the merits of Movants' motion.

**11.** 11 U.S.C. § 1307(c) states in pertinent part:

Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause. . . .

**12.** Debtor avers under § 1307(c) he is entitled to notice and a hearing before dismissal. Since the parties fully addressed the merits of

no duty to disclose the post-confirmation assets or financial transactions. In addition to the Trust, the complained of transactions are previously set forth in this opinion, and include cash payments and loans from and to various parties. (*See* pp. 5–7, *supra*.)

Debtor argues he had no duty to disclose these post-confirmation transactions. He cites the case of *In re Waldron,* 536 F.3d 1239 (11th Cir.2008) in support of this proposition. *Waldron* involved the question of whether the bankruptcy judge abused his discretion in ordering the debtor to amend his schedules to include a post-confirmation settlement of uninsured motorists benefits and the court held it was not an abuse of discretion. *Waldron,* 536 F.3d at 1245. However in *Waldron* the court stated, "we do not hold that a debtor has a free-standing duty to disclose the acquisition of any property interest after the confirmation of his plan under Chapter 13." *Waldron,* 536 F.3d at 1246. Indeed, as Debtor points out the duty to disclose has been a topic of much discussion among the courts here in the Southern District of Georgia.[13] Under *Waldron,* certainly Debtor could have been required to amend his schedules to include the substantial assets acquired post-confirmation. *Id.* at 1245. In the current case, the issue is whether this failure to disclose constitutes bad faith.

Given the specific facts of this case, I find the failure to disclose these financial dealings does not rise to the level of bad faith warranting dismissal of the case. The most substantial assets acquired by Debtor are the $49,000.00 from his ex-wife's 401k, along with the two $5,000.00 property settlement payments he received through his divorce. This money was acquired after Debtor made his last plan payment. Movants' motion for modification was based upon the failure to disclose the Trust. Debtor thought the Trust was not property of the estate. He had made his last proposed plan payment and but for the modification motion he was awaiting his discharge. Given this, I do not find Debtor's failure to disclose these transactions constitutes bad faith grounds for dismissal.

Movants further contend Debtor incurred debts without proper approval in violation of the confirmation order. (Dckt. No. 63, ¶ 4.) The testimony certainly indicates Debtor incurred some post-confirmation debts that should have been disclosed to the chapter 13 Trustee or the Court for approval. (Dckt. No. 63, ¶ 4.) However, most of the loans were used for legitimate purposes such as to make plan payments, pay taxes, child support, hire a lawyer, and hold Debtor over while he was between jobs and his plan payments. Furthermore, as previously addressed, the vast majority of loans occurred after Debtor completed his proposed plan payments. In this case, while such conduct certainly is not to be condoned, I do not find it rises to the level of bad faith or "unmistakeable manifestations" of abuse of the bankruptcy process. *In re Waldron,* 785 F.2d at 941. This also is true for remaining "undisclosed" transactions. For these reasons, I decline to grant the motion to dismiss. *See In re Moore,* 188 B.R. 671, 679 (Bankr.D.Idaho 1995)(court declined to dismiss chapter 13 case, notwithstanding evidence of debtors' lack of good faith, after their plan had been confirmed, in failing to disclose proceeds realized from sale of timber and in

---

these transactions at the hearing and in their briefs, and I find such conduct does not require dismissal under § 1307(c), I have addressed the merits of the argument.

**13.** *Compare In re Batten,* 351 B.R. 256 (Bankr.S.D.Ga.2006) and *In re Foreman,* 378 B.R. 717, 721 (Bankr.S.D.Ga.2007) *with In re Harvey,* 356 B.R. 557 (Bankr.S.D.Ga.2006).

only belatedly filing tax returns in which a timber sale was disclosed, to allow debtors opportunity to fund their chapter 13 plan as it was originally confirmed).

Pursuant to the foregoing Findings of Fact and Conclusions of Law, it is therefore ORDERED that Movants' Motion to Modify Debtor's Chapter 13 Plan is DENIED. It is FURTHER ORDERED, Movants' oral motion to dismiss the bankruptcy case is DENIED.