## In re BRYSON.

### No. 461.

District Court, N. D. Texas, San Angelo Division.

May 4, 1931.

Critz & Woodward, of Coleman, Tex., for bankrupt.

Nat Harris, of Waco, Tex., and Crager & Dickey, of Ballinger, Tex., opposed.

ATWELL, District Judge.

The Farmers' & Merchants' State Bank filed specifications of objections to the discharge of the bankrupt and alleged: (1) That he had concealed assets from his receiver and trustee in that he had knowingly, willfully, and fraudulently omitted property from his schedules; (2) that he had made a false oath in relation to a proceeding in bankruptcy with reference to a material matter, in that he had legal title to a large amount of property which he did not schedule; (3) that he had entered into conspiracy with Ellen E. Bryson, his mother, for the purpose of placing some of his property beyond the reach of his creditors in order to hinder, delay, and defraud them, setting out a description of approximately six thousand acres of land in Concho county, Tex.

Specifications 2 and 3 revolve around an aggregate of six thousand acres of land that were deeded to the bankrupt by his father and mother contingently. He was to have a life estate provided he kept the assessments and taxes against the same paid.

The record shows that similar deeds were made to some of the other children; that the bankrupt, after the death of his father, did not comply with the covenants of the deed and allowed taxes for the years 1918 and 1920 to become overdue and suffered the state to bring foreclosure suits. Thereupon his surviving mother brought suit against him to cancel the deed and secured a judgment to that effect. There is nothing in the record which suggests that there was any collusion in this suit. A reputable attorney was employed, who testifies that nothing of that sort was disclosed to him, and the testimony of the mother and the bankrupt leave no ground for such conclusion. The mother filed a similar suit against at least one of the other children and recovered the land.

The fact that she permitted the bankrupt to make use of a part of the land upon an arrangement between themselves may be accounted for upon maternal grounds and without any conclusion of fraud. It is disclosed that she mortgaged and sold a number of the tracts. The transaction with Barker which was concluded by the bankrupt for his mother is no evidence to the contrary.

I do not find a sufficient support for either specification 2 or 3.

Specification 1 relates to a wholly different matter.

The bankrupt is more than forty years of age, and while it does not appear that he had extended school advantages, it does appear that he enjoyed public school through the sixth or seventh grade. But school learning is not essential to the spontaneous expression of a fact or a truth.

The mother and father of the bankrupt, by frugal lives, had accumulated over a million dollars worth of west Texas lands. It was community property. They made a contractual joint will and codicil vesting in the survivor all of such lands during the life of such survivor. Upon the death of the survivor the children were to share equally in what remained. This was a vested interest which passed to the bankrupt. 70a, par. 5, Bankruptcy Act, 11 USCA § 110 (a) (5); Caples v. Ward, 107 Tex. 341, 179 S. W. 856. See, also, Vellacott v. Murphy (C. C. A.) 16 F.(2d) 700. As to the rule in some other states, see In re Martin (C. C. A.) 47 F.(2d) 498; Suskin v. Rumley (C. C. A.) 37 F.(2d) 304, 307, 68 A. L. R. 768.

The father died more than ten years before the bankrupt filed his petition. The bankrupt had borrowed approximately $25,000 from a local bank. He had no property that would justify such a credit save and except that he was an heir—a child—of the Brysons.

There is some testimony which tends to show that the mother of the bankrupt advised him to go forward and take advantage

of the relief that the bankrupt law allowed and furnished him the money to pay the attorney's fee. Each side places its own construction upon what was said. Be that as it may, the bankrupt filed his solemn schedules. Each page of the schedules was signed by him. One of the pages is headed, "Property in reversion, remainder or expectancy, including property held in trust for the debtor or subject to any power or right to dispose of or to charge." Beneath these words on that particular page of the schedules, in brackets, is this: "[N. B. and particular description of each interest must be entered. If all or any of the debtor's property has been conveyed by deed of assignment, or otherwise, for the benefit of creditors, the date of such deed should be stated, the name and address of the persons to whom the property was conveyed, the amount realized from the proceeds thereof, and the disposal of the same, so far as known to the debtor.]"

The schedule further calls for a particular description; the interest in the land; supposed value of the interests; rights and powers; legacies and bequests. To all of these inquiries on this page of his schedules the bankrupt wrote naughts, indicating none, and then signed the entire page. In re Dorgan (D. C.) 237 F. 507.

The bankrupt says that he did not read the will after his father's death until a few days before his examination in bankruptcy upon the question of his discharge. Upon this suggestion it is argued that he did not "wilfully and knowingly," within the severe meaning of the statute, conceal. I realize that there must be particularity and there must be proof by a fair preponderance of credible testimony. In re Garrity (C. C. A.) 247 F. 310; In re Merritt (C. C. A.) 28 F. (2d) 679; In re Slocum (C. C. A.) 22 F.(2d) 282; In re Delmour (D. C.) 161 F. 589.

But did a grown man with a family and children, and with the potential interest in his father's vast estate and ranches, fail to advise himself as to what his father had done for him? It was probably the occasion of personal speculation, and the subject of family discussion. See In re Leslie (D. C.) 119 F. 406.

It would be trifling with the Bankruptcy Law to allow a bankrupt to be relieved upon a plea of ignorance from responsibility for such a situation by the mere statement that he did not know anything about it. He should have disclosed in his schedule his expectancy, In re Goldman (C. C. A.) 37 F.(2d) 97, and when he did not do so, under the facts as shown here, he knowingly, willfully, and fraudulently concealed that which he should have revealed, and this concealment makes it impossible for the court to discharge him. In re Stoddart (D. C.) 114 F. 486; Farmers' Savings Bank v. Anton (C. C. A.) 1 F.(2d) 103; In re Slocum, 22 F.(2d) 282; In re Becker (D. C.) 106 F. 54.

He also omitted to schedule certain sheep and cows.

An order will be drawn overruling specifications 2 and 3 and sustaining specification 1, and denying the bankrupt his discharge, and there will be included in the order the fixing of a fee of $100 for the special master, C. T. Dalton, Esquire, referee.