CHARLES ALBERT WAGGONER and Others, Infants, by GEORGE WAGGONER, Their Guardian ad Litem, Respondents, v. MICHAEL JAGEACKS and Another, Appellants, Impleaded with ROBERT D. McKAY, Defendant.

Fourth Department, May 9, 1934.

*Robbins & Robbins* [*Albert W. Robbins* of counsel], for the appellants.

*Wilbur F. Knapp* and *James S. Drake*, for the respondents.

THOMPSON, J.   Plaintiffs, infants, by their father, as guardian *ad litem*, attack defendant Bullock's right and title under certain tax deeds, upon the ground that the deeds were procured under an understanding, agreement and arrangement, by which said defendant was to hold the property for plaintiffs, and deed it to them, or their father.   The father does not sue in person.   The complaint further charges that thereafter defendant Bullock deeded the property to defendant Jageacks, without consideration, with notice and in fraud of plaintiffs' rights, and asks that it be determined that plaintiffs are the owners in fee of the premises, that defendants have no interest in them, and that defendants be forever enjoined from interfering with plaintiffs' title and possession.   Neither the validity of the taxes, the regularity of the proceedings to enforce their collection, which resulted in the sale of the property and the giving of the tax deeds, nor the legal title to the lands sold, in defendants, is questioned.   The trial court has awarded plaintiffs a judgment, adjudicating that they have absolute title to the premises described in the complaint; that defendants, and none of them, have any right or title, legal or equitable, to the property, and that defendants' deeds of the property described in the complaint are null and void and of no effect.   The judgment does not direct a reconveyance, adjudicate that defendant Bullock took the property charged with a trust in favor of plaintiffs, or award damages.   Defendants have appealed.

Plaintiffs are the children of George Waggoner and took title to the property in suit under a provision of the will of their grand-

father, Albert J. Waggoner, deceased, made subject to the life estate of their father and mother, which reads as follows: " I give to my son George and his wife May the use of all my real estate so long as they may live. Provided they each or both pay the taxes thereon. * * * Provided however that my son George and his wife May fail to pay such taxes above mentioned, my real estate shall directly become the property of the children mentioned in this paragraph."

Decedent died January 9, 1927, and his will was admitted to probate July 30, 1928. George Waggoner, decedent's son, father of the plaintiffs, and their guardian *ad litem* in this suit, and his wife, May, have been in possession of the premises since the death of decedent, and his children, the plaintiffs, have there resided with them. They have at no time paid the taxes required of them by the provisions of decedent's will, nor have the plaintiffs, or any one in their behalf. By reason of default in the payment of the taxes which became due upon the premises in the year immediately following the death of decedent, the property was sold at a tax sale, and was bid in by one Myron Wagner. Subsequently, and on August 29, 1929, defendant Bullock loaned plaintiffs' father, the said George Waggoner, the sum of seventy-seven dollars and fifty-four cents, who gave his note for that amount payable one year from the date above mentioned, for the purpose of redeeming the premises from Wagner. The funds were actually used for that purpose by the father and the property was redeemed. On October 1, 1929, a second default having been suffered in the payment of the taxes, the property was again sold at a tax sale, and this time it was bid in by defendant Bullock. Plaintiffs claim that this was done upon the express promise of Bullock that he would " bid the property in for the children." It appears that at this time the father promised Bullock to pay his note given for the moneys he had borrowed from him to redeem the property from the first tax sale, and also that he would redeem the property from the tax sale to Bullock, from moneys he expected to get for doing certain jobs of painting. On November 28, 1930, Bullock received tax deeds of the premises from the treasurer of Steuben county, and on the same day served notices to redeem the property conveyed by the tax deeds upon George Waggoner, as occupant; said notices providing that unless the consideration money with the addition of thirty-seven and one-half per cent, and fifty cents, should be paid into the Steuben county treasury, for the benefit of the grantee, within six months after evidence of service of the notice should be filed, the conveyances of the county treasurer would become absolute. On December 24, 1930, these notices with due

proofs of service, were filed in the Steuben county treasurer's office, pursuant to law. (Tax Law, §§ 134, 135, 158.) Nothing was ever paid into the county treasury, pursuant to the notices, nor has anything been done at any time toward a redemption of the property from the tax sale, nor does it appear that payment, tender or offer has been made to defendant Bullock of the moneys he advanced to pay back taxes, and for which the note was given, or of the amounts necessary to redeem the premises from the sale to him. The tax deeds on the sale to defendant Bullock were recorded in the Steuben county clerk's office on October 7, 1931. On December 12, 1931, Bullock conveyed the premises to defendant Jageacks.

Plaintiffs could take no estate or interest in the real property by the oral agreement which they plead in the complaint, if such an agreement was made, nor could this agreement be invoked by them for the purpose of setting up a " trust or power, over or concerning " the real property described in the deeds. (Real Prop. Law, § 242.) If such an agreement was made, it could not be enforced, and any party to it might legally and rightfully refuse to recognize or perform it. (*Woolley* v. *Stewart*, 222 N. Y. 347, 350, 351.) But the court has found that defendant Bullock fraudulently planned and schemed to obtain title to the premises in question for the amount of the taxes, and that in further pursuance of said fraudulent purpose he conveyed it to defendant Jageacks. The first oral understanding was that defendant Bullock would loan plaintiffs' father the money to redeem the property from the first tax sale upon his express promise to repay it. Upon the occasion of the second tax sale, plaintiffs' father having failed to return the money which he had previously borrowed, and being without funds to bid in the property at that time, Bullock bid in the property in his own name. There is no claim, or proof to support it, that he was asked or that he agreed to take the property in the names of plaintiffs or their father. To the contrary, there was equity and propriety in his taking the property in his own name by reason of his previous advancements, and because he paid the purchase price.

It seems to us that the most that the testimony found in the record can be held to establish is that defendant Bullock bid in the property on the second tax sale, with the oral understanding that the property might be saved to the plaintiffs by the payment to him of the amounts that he had disbursed, at any time within the redemption period, which, as the statute provides, was one year from the time of the sale, and after the expiration of an additional six months after the filing of proof of service of the

notices to redeem. In all the circumstances such an agreement would have been natural and fair to all parties. There is testimony to support it in document, statute and the various factual elements inherent in the case. There is no proof from which it can be inferred that defendant Bullock agreed to hold these premises during the infancy of the minor plaintiffs, or for a longer time than the redemption period provided by law, or that plaintiffs believed that he so agreed, or relied on any such promise. As appears above, such an agreement would be without legal effect, nor could equitable relief be predicated upon it unless fraud is shown.

Payment has not been made, nor does it appear that a tender of the amounts due with a demand for a reconveyance of the property or cancellation of the tax deeds has ever been made or suggested, either within the periods set by the statute, or at any time. So, more than three years have expired since the tax deeds were executed and delivered by the county treasurer to defendant Bullock, and the filing of proof of service of a notice to redeem upon the occupant of the premises, as required by section 134 of the Tax Law in the Steuben county treasurer's office. In such a case the title would be perfect even though proof of service of the demand, under Tax Law, section 135, had not been filed. (*Mabie* v. *Fuller*, 255 N. Y. 194.)

Upon the whole proofs we hold that the testimony is not sufficient to support the findings of fact to the effect that the title to this property was secured by defendants, or either of them, by fraud. Fraud will not be presumed, but must be definitely alleged and clearly proved.

" It is a fundamental principle that fraud must be proved and not assumed, and when a judgment is based upon a finding of fraud, to sustain the judgment there must be evidence of fraud which justifies the finding. * * * However suspicious the circumstances may seem, bare suspicion without evidence to support it is never sufficient to sustain a finding of fraud." (*Barr* v. *Sofranski*, 130 App. Div. 783, 789.)

The judgment should be reversed, with costs, and the complaint should be dismissed, with costs; certain findings of fact and conclusions of law should be disapproved and reversed and new findings and conclusions made.

All concur.

Judgment reversed on the law and facts, with costs, and complaint dismissed, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.