John B. Lynch, Respondent, *v.* W. Frazer Gibson and Others, Individually and as Copartners Formerly Doing Business under the Firm Name and Style of Edey & Gibson, Defendants, Impleaded with Raymond T. Fish, Appellant.

First Department, April 14, 1938.

*Nathan Coplan* of counsel [*Barney B. Fensterstock* and *Richard C. Flesch* with him on the brief; *Zalkin & Cohen*, attorneys], for the appellant.

*Victor House*, for the respondent.

Dore, J.  Plaintiff instituted this action against Edey & Gibson, a stock brokerage firm, and one Raymond T. Fish, customer's man employed by that firm, to recover approximately $600,000 as damages for alleged breach of contract, negligence, fraud and fraudulent conspiracy in respect to plaintiff's brokerage accounts with defendant Edey & Gibson.  Immediately prior to trial plaintiff settled with Edey & Gibson for $4,000, reserving his rights against Fish. The case proceeded to trial before the court without a jury on an amended complaint solely against defendant Fish.

Plaintiff's theory of action against Fish is that he gave Fish power to handle his accounts during his absence in Europe in 1929 but that he limited the broad authority given under a power of attorney by oral instructions that his account be maintained on a fifty per cent margin and that no more than one hundred shares of any one stock be purchased without specific instructions; and plain-

tiff claims that after September, 1929, defendant violated the instructions, opened unauthorized accounts in plaintiff's name, made improvident purchases of large blocks of stock causing plaintiff's account to be undermargined, transferred collateral to that account from the plaintiff's investment account with the New York Trust Company, converted all plaintiff's securities with the said bank, supported defendant's personal and family accounts and other special accounts with plaintiff's securities and money without advising plaintiff, in violation of his fiduciary duties, and, in fraud of the plaintiff, transferred securities defendant had bought for himself to plaintiff's account after the market fell.

It is obvious the trial court did not accept plaintiff's testimony with regard to most of the charges made and claims asserted. Hundreds of transactions were involved aggregating the sale of thousands of shares of stock with a value of several million dollars. Out of all these transactions, and out of claims aggregating approximately six hundred thousand dollars, the court found a verdict in plaintiff's favor only for $18,128, which with interest resulted in a judgment for $24,535.51. It is also manifest that the trial court refused to accept plaintiff's testimony concerning his alleged oral limitations on defendant's discretionary authority or his claimed instructions with respect to handling the accounts, for the damages awarded obviously do not repose upon such alleged breaches of duty. From the dates given in the court's brief memorandum decision, we conclude the court found that plaintiff sustained damages through defendant's breach of duty only in connection with the following three transactions:

A. $5,875.50 — purchase on October 25, 1929, of 200 shares of Burroughs Adding Machine Company stock;

B. $9,959.50 — purchase on October 26, 1929, of (1) 100 shares of American and Foreign Power; (2) 200 shares of Burroughs Adding Machine Company stock;

C. $2,293 — debit on November 6, 1929, of the purchase price of 22½ shares of Tekram Corporation stock.

These transactions will be referred to respectively as " A," " B " and " C."

Plaintiff and defendant Fish, prior to the financial collapse in 1929, had been close friends and both of them speculators in the stock market. On March 19, 1929, defendant became a customer's man at the brokerage office of Edey & Gibson. This was his first employment in Wall Street. On the same day plaintiff opened with Edey & Gibson an account known as " J. B. Lynch Regular Account " and shortly thereafter gave up his employment with the New York Telephone Company and sailed for Europe on April 30, 1929, not returning until December 8, 1929.

Prior to his departure, plaintiff made arrangements with defendant to handle his personal and business matters in his absence, left everything to defendant's discretion and judgment, and gave the broadest powers with regard to his checking and securities accounts at the New York Trust Company. He had already given Edey & Gibson the broadest powers of attorney, expressly authorizing defendant Fish to trade in securities and commodities for plaintiff's account and risk. He also turned over to Fish an account that he held with Edey & Gibson, known as the "J. B. Lynch 'K' Account." It is conceded that the "K" account was at all times thereafter the individual account of defendant Fish. During his absence abroad in 1929, plaintiff gave defendant unlimited powers in writing and the record establishes Fish's contention that such powers were not restricted by oral instructions. On a previous occasion, in 1927, when plaintiff had gone abroad he had also left his affairs in Fish's hands and was well pleased with the way defendant handled the account he had at that time with another brokerage firm. During the inflationary wave in 1929, Fish was conspicuously successful in stock trading for plaintiff, and plaintiff, while riding the crest of the wave, had evidently been most liberal in helping certain of his friends by opening accounts in their names with the idea of making money for them in trading, all under the judgment and discretion of defendant Fish. Repeatedly during his stay abroad in 1929, plaintiff wrote and cabled defendant in terms of fulsome praise for the results achieved. In August he invited defendant to procure with plaintiff's funds a letter of credit for $10,000 and use it on a trip to Europe and spend the winter with plaintiff on the Riviera. Plaintiff, in that letter, added, with regard to stock transactions, "Don't care how much you take on for me, either by buying or switching." There were numerous other written declarations of complete and unlimited authority, confirming the powers of attorney already given.

All the circumstances indicate that plaintiff did approve at the time all defendant's acts and that the defendant was entirely justified in believing that he had such approval, and in the emergency that arose during the panic of 1929 defendant apparently in good faith used his best judgment throughout. During the entire period, plaintiff was in frequent communication with defendant by cable and by letter and on November 13, 1929, they had a long transatlantic telephone conversation between New York and London. Like so many similar arrangements made at that time, all went well until the wholly unexpected and calamitous market collapse in October and November, 1929. Even then, on learning of the panic, plaintiff wired defendant "Mine's yours." On

October 30, 1929, he cabled, " Ray Fish is the world's best broker," and on October thirty-first, " Heartfelt gratitude." On November first he wrote, " Go ahead and use my stuff if you need it — as I don't want to be in the running unless you are." Acting on these and similar instructions, defendant did borrow funds for his own account but all such moneys were fully repaid with interest and no claim is made for them in this action.

When plaintiff returned to New York on December 8, 1929, he reviewed all of the transactions which had taken place, and although he testified that he complained then of the handling of the accounts, he continued to maintain his account at Edey & Gibson's and to trade therein until January 30, 1930, when that firm was dissolved, at which time he transferred his accounts to Paige, Smith & Remick, a new firm composed, however, of some of the former partners of Edey & Gibson. The present action was not instituted until April, 1931, a year and a half after plaintiff's return from Europe. In the broad, sweeping and even reckless charges made against all the defendants, the action is characteristic of similar actions brought by disillusioned speculators against those whose judgment and discretion they had praised without limit while the speculative mania was successful.

The items on which recovery was allowed were apparently predicated on the ninth cause of action based on fraud. After examining the evidence, we reach the conclusion that the record wholly fails to sustain the charges made under that or any of the other numerous causes of action alleged. The theory on which defendant was charged with the loss in connection with transaction " A" (purchase on October twenty-fifth of 200 shares of Burroughs Adding Machine stock) evidently was that the stock had been originally purchased by defendant for his own account and then transferred to plaintiff's account when the market declined. This conclusion was apparently based on the fact that the original order slip for 250 shares read " J. B. Lynch ' K,' " defendant's individual account, and also on the fact that the blotter sheets of Edey & Gibson for October twenty-fifth and twenty-sixth were not produced. The ledger, however, of that firm showed that 200 shares of the stock were purchased for and charged to the J. B. Lynch Regular Account. The ledger was made up from the blotter sheets. It was not shown that defendant had anything whatever to do at any time with the so-called blotter records of Edey & Gibson and, under the facts disclosed in the entire record, the non-production of these particular blotter sheets did not establish fraud against defendant Fish. In view of the vast number of transactions furnishing defendant ample opportunity for fraud if he had been

so disposed, the imputation of a fraudulent intent on this transaction rests on doubtful inference and suspicion rather than on proof. Fraudulent acts will not be presumed nor can they be based merely on suspicion, conjecture or doubtful inference. Here, as elsewhere, fraud must be established by clear and convincing factual proof. (*Lowendahl* v. *Baltimore & Ohio R. R. Co.*, 247 App. Div. 144.) If defendant had intended to do what this plaintiff charges, namely, allocate shares to plaintiff's account after a market change had shown the purchase unprofitable, he would have allocated the entire purchase of 250 shares instead of only a part, and also probably altered the order slip to reflect the correction. Fish's entire action and his testimony with respect to this transaction were those of a man who had acted honestly and not dishonestly. This conclusion is confirmed by the fact that on November first, long before any claim was made or thought of, he wrote plaintiff that he had received the expected "tip" regarding Burroughs stock as "the chance of a lifetime" and that he was not in a position to buy but that he had bought "several hundred shares" for plaintiff. Burroughs, as the record clearly establishes, was a stock especially favored by plaintiff, and defendant had received from one Spalthoff the so-called market "tip" which plaintiff had told him to await. Defendant has been upheld as to every transaction which he made for plaintiff's account prior to October 25, 1929, involving purchases and sales which up to that time exceeded $3,000,000. Only on doubtful inference and not on the clear and convincing proof required can it be inferred that he suddenly turned dishonest and in this particular transaction deliberately defrauded his best customer and friend.

Transaction "B" (purchase on October twenty-sixth of 100 shares of American and Foreign Power and 200 shares of Burroughs Adding Machine stock) is in itself a further proof that the purchase on the prior day was made for the Lynch Regular Account indicating that defendant still believed Burroughs to be a good stock to buy, as he purchased for that account another 200 shares on October twenty-sixth. Again, the ledger entries which constitute the definitive record reflect the transaction as testified to by Fish. He clearly had authority to make the purchases and the only conceivable theory upon which the court imposed liability is again that the defendant was guilty of fraud as alleged in the ninth cause of action. There is no evidence whatever in this transaction that the name J. B. Lynch Regular Account was not furnished to the order clerk.

In the case at bar it must constantly be kept in mind that plaintiff was fully aware that in addition to his own regular discretionary

account, with full and complete authority to defendant to act, defendant was trading for himself in the "K" account and for other customers, friends of Lynch, in other discretionary accounts. No presumption may be indulged in that fraudulent advantage was taken. On the facts disclosed, we find no basis for this charge. Evidently defendant was using his best judgment to average down the cost of original purchases made on behalf of plaintiff, a matter well within his power and authority. Both these stocks were highly thought of by plaintiff who had written defendant, as above indicated, regarding Burroughs, and also that he was satisfied to have defendant buy American and Foreign Power for him at any favorable opportunity.

Transaction "C" was one-half the cost of forty-five shares of Tekram Corporation stock which defendant had bought on September 9, 1929, one-half for plaintiff and one-half for himself, the certificate for which at defendant's direction was entered in the name of John B. Lynch. Again, on November 6, 1929, long before there was any claim or suit, defendant informed plaintiff by letter of this transaction, and when plaintiff returned from Europe he was given the certificate for the forty-five shares and has since retained the same. It is clear that defendant had complete authority to purchase this stock and charge half of it to Lynch's account.

The burden of proof of establishing the alleged fraud or other breach of duty was on plaintiff. That burden was not sustained.

In view of our conclusions as to the merits of the action, it is unnecessary to discuss the other issues raised.

The judgment herein should be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., O'MALLEY, COHN and CALLAHAN, JJ., concur.

Judgment unanimously reversed, with costs, and the complaint dismissed, with costs. Settle order on notice.