· **In re Donald KREISS and Randi Kreiss, Debtors.**

**Philip R. MANN, as Chapter 7 Trustee of Donald Kreiss and Randi Kreiss, Plaintiff,**

**v.**

**Donald KREISS (individually and in his capacities as Executor and Testamentary Trustee under the Will of Jack Kreiss, deceased), Robert Morris (individually and in his capacities as Executor and Testamentary Trustee under the Will of Jack Kreiss, deceased), and Ira Berliner (individually and in his capacity as Testamentary Trustee under the Will of Jack Kreiss, deceased), Defendants,**

**Howard Kreiss, Intervenor.**

**Bankruptcy No. 884–40638–18.
Adv. No. 885–0173–18.**

United States Bankruptcy Court,
E.D. New York.

April 30, 1987.

See also, D.C., 58 B.R. 999.

Gabriel S. Schwartz, Hahn & Hessen, New York City, for Trustee, Philip R. Mann.

Martin F. Brecker, Certilman Haft Lebow Balin Buckley & Kremer, New York City, for debtors.

Howard S. Dorris, Jericho, N.Y., for Howard Kreiss, intervenor.

## DECISION

C. ALBERT PARENTE, Bankruptcy Judge.

The plaintiff/trustee in the above-captioned proceeding brings this action to recover property pursuant to §§ 541 and 542 of the Bankruptcy Code, contending that two testamentary trusts established in accordance with the will and codicils of Jack Kreiss, the debtor's father, constitute property of the estate.

FINDINGS OF FACT

A trial was held on September 17, 18, 19, 24, 25, and October 1, 1986, producing almost one-thousand pages of testimony, which are permeated with allegations of fraud and deception, innuendo and deceit. The facts are as follows:

On April 12, 1984, Randi ("Randi") and Donald Kreiss ("Donald" or "debtor") filed a joint Chapter 7 petition in bankruptcy.

The bankruptcy trustee, Philip R. Mann ("trustee" or "plaintiff") was appointed by order of the court dated May 22, 1984 and continues in that capacity.

On November 5, 1981, Jack Kreiss ("Jack"), Donald's father, executed a Last Will and Testament bequeathing 50% of his residuary estate to his son Donald, 25% to his son Howard and 25% to his grandchildren Jason and Jocelyn, Donald's children. Donald was named custodian of his children's interest during their minority. Donald and his mother Lillian Kreiss ("Lillian") were named executors. Co-defendants Robert Morris ("Morris") and Ira Berliner ("Berliner"), Jack's attorneys, were named successor fiduciaries.

Testimony adduced at trial reveals that sometime before August 1983 Jack, angered by Howard's nonconforming lifestyle, decided to change his will. On August 22, 1983 he executed a First Codicil, revoking the outright bequest to Howard and substituting a trust in which Donald as trustee was granted legal title to the property, and Howard as life tenant was granted the equitable interest. The trust remainder was divided among Donald (50%) and his children Jason (25%) and Jocelyn (25%). This trust is referred to hereinafter as the "Howard Trust" to avoid confusion with a later trust established in accordance with the Second Codicil to Jack's Will.

The first codicil provides *inter alia* that the trustee may at his "absolute discretion" pay the trust income to the life tenant "in accordance with the wishes which I [Jack] have orally presented to my said son DONALD ALLEN KREISS from time to time." Plaintiff's Exhibit 3, First Codicil to Will of Jack Kreiss.

The codicil further states that Jack had "full knowledge of the fact that in his capacity as trustee, ... [Donald] may be called upon to make such ... decision[s] which would benefit himself and his children." Plaintiff's Exhibit 3, First Codicil to Will of Jack Kreiss.

By the spring of 1984, Donald found himself in financial distress. Donald and Randi, his wife, had personally guaranteed business loans approximating $5,000,000.00 and were unable to meet these obligations.

The exact chronology of the succeeding events is at times unclear. Witnesses at trial gave contradictory testimony, expressing uncertainty as to who placed or received phone calls and at what time of day they were made or received. The trustee places great emphasis on these details in a valiant and adroit effort to prove that in April 1984 the codefendants, Donald, Morris, and Berliner, in conjunction with Jack Kreiss, conspired to contravene the spirit and goals of the Bankruptcy Code and in particular to avoid section 541(a)(5)(A). The trustee contends that the parties schemed and executed a plan in which Jack's testamentary estate would be "parked" out of the reach of Donald's creditors, while permitting Donald full enjoyment of his legacy after the close of his bankruptcy case.

The record discloses that on April 3 and 4, Donald met with Ira Berliner, his attorney, a member of the firm of Morris, Berliner & Morris ("MB & M"), to discuss his financial problems. Berliner suggested that Donald and Randi file a personal bankruptcy petition under Chapter 7 of the Bankruptcy Code. Donald was apprised by Berliner that 11 U.S.C. § 541 renders property received by bequest, device, or inheritance within 180 days of the filing of the petition, property of the estate. 11 U.S.C. § 541(a)(5)(A) (1986).

Late in the day on April 4, 1984 Jack Kreiss called the offices of MB & M intending to speak with his attorney, Robert Morris, the firm's senior partner. Jack, having been informed that Morris was vacationing in Florida, spoke with Ira Berliner.

It is clear from testimony that Jack knew of Donald's financial difficulties at the time he called the offices of MB & M. His discussion with Berliner focused on the provision of his will which bequeathed Donald fifty percent of his residuary estate. Berliner testified that Jack was concerned that Donald's inheritance under the will might be dissipated, leaving nothing for his grandchildren.

The trustee asserts that on April 4, 1984 Jack Kreiss, knowing he was gravely ill and near death, conspired with Donald, Morris and Berliner to contravene 11 U.S.C. § 541(a)(5)(A) (1986) by formulating a plan in which a testamentary discretionary spendthrift trust was created naming

Donald the life tenant and Berliner and Morris as co-trustees. The trustee further alleges that Berliner and Morris intended to act as the agents of Donald refraining from distributing trust assets to the life tenant until Donald's discharge in bankruptcy was complete, and then distributing to Donald all of the corpus and accumulated interest.

In diametric opposition to the trustee, the defense contends that on April 4, 1984 Jack, aging but in good health, acted as he had in the past, seeking to perpetuate the wealth he had accumulated during his lifetime and to control its use after his death. Earlier when Howard had disappointed Jack by abandoning his ancestral faith, he had responded by changing his will. Now Donald was disappointing him by placing his home and family in financial jeopardy by filing a petition in bankruptcy. Thus Jack, without consulting Donald, sought to safeguard the bulk of his considerable estate for his grandchildren concomitantly providing Donald with funds in the event of an emergency.

At Berliner's suggestion, a second codicil was drafted, revoking Donald's residuary bequest and replacing it with a discretionary trust ("Donald Trust"), providing for Berliner and Morris, co-trustees, to distribute interest and corpus to the life tenant at their discretion. The trust instrument grants Donald a life estate and names Donald's children as remaindermen. Under the terms of the trust instrument, the co-trustees may grant loans of trust corpus and/or interest to Donald if they approve of the stated purpose of the loan. The second codicil provides: "The trustees shall have no liability to the beneficiaries should the loan not be repaid." Second Codicil to Will of Jack Kreiss.

On April 4, 1984 Berliner spoke with Morris by telephone informing him of Donald's financial problems and Jack's anxiety over his will. Their discussion included the proposed provisions of the second codicil. Morris concurred in the advice Berliner had given both Donald and Jack.

On April 5, 1984 Berliner was informed either by Jack directly or indirectly through Morris, to proceed with the final drafting of the second codicil. He was instructed to name himself and Morris co-trustees of the Donald Trust.

Randi and Donald visited Berliner's office at 10:00 a.m. on April 5, 1984 to discuss further the filing of a personal bankruptcy. At the conclusion of that meeting, the Kreisses were still uncertain about filing. A few days later they instructed Berliner to prepare a joint Chapter 7 bankruptcy petition in their names.

During this period Berliner finalized the draft of the Second Codicil to Jack's Will and contacted Lillian Kreiss about changing her will. In the past, whenever Jack had changed his will, Lillian had changed hers. She instructed Berliner to prepare a codicil which revoked her 50% bequest to Donald and substituted a bequest to Jason and Jocelyn. Lillian's testamentary gifts are not in dispute.

On April 10, 1984 the Second Codicil to Jack's Will was executed at his home. His signature was attested to by Dr. Stanley Bromberg, Lee Stark and Kelsie Berry. Dr. Bromberg is Randi Kreiss' father, Lee Stark is a business associate of Donald's and Kelsie Berry was Jack Kreiss' housekeeper.

The codicil was picked up and delivered to the offices of MB & M by Donald. At the hearing, Donald testified that he had not seen the contents of Jack's will or the second codicil until approximately one week after Jack's death when he and Robert Morris met to discuss the will's probate.

Berliner contends that he never discussed Jack's will with Donald or Donald's bankruptcy with Jack. He testified that Donald and Jack were two separate and distinct clients and treated as such at all times, in accordance with the code of ethics.

On April 11, 1984 Donald and Randi met with Berliner at his office and executed their Chapter 7 petition in bankruptcy. The petition was filed with the court on April 12, 1984.

Jack Kreiss died on May 21, 1984 and Lillian died on May 27, 1984.

On May 30, 1984 Donald, under the power vested in him by the First Codicil to Jack Kreiss' Will, designated Morris as co-executor and co-trustee of Jack Kreiss' estate. MB & M were retained as attorneys for the estates of Jack and Lillian Kreiss.

## CONCLUSIONS OF LAW

For the sake of clarity, each trust will be discussed separately.

## THE HOWARD TRUST

█ Jack Kreiss' disapproval of his son Howard's lifestyle manifested itself in the first codicil of his will. On August 22, 1983, concerned that Howard would squander his bequest, he executed the first codicil, stating in pertinent part:

FIRST: Paragraph Ninth C is hereby deleted and in its place a new subdivision C is to appear as follows:

C. One of such parts shall consist of 25% of the corpus. I give and bequeath such corpus to my son, DONALD ALLEN KREISS, a trustee however for the following purposes. He shall invest and reinvest such corpus. In the absolute discretion of the trustee, he may pay the income therefrom to or for the benefit of my son, HOWARD STANLEY KREISS. He likewise has the absolute discretion not to pay all or any part of the corpus of the trust at any one or more times to HOWARD STANLEY KREISS. Upon the death of HOWARD STANLEY KREISS, if there be any undistributed corpus or income in the trust, then 50% thereof is hereby given to my son DONALD A. KREISS, 25% thereof shall be added to the trust for the benefit of my grandson, JASON KREISS as per paragraph NINTH D and 25% thereof added to the trust for the benefit of my granddaughter, JOCELYN KREISS, as per the provisions of paragraphs NINTH E of my Will. Since it is possible that DONALD A. KREISS may not be aware of the death of HOWARD STANLEY KREISS, I hereby direct that if DONALD A. KREISS does not hear from HOWARD STANLEY KREISS for a period of five (5) years and has made reasonable efforts to determine during the fifth year whether said HOWARD STANLEY KREISS is alive or not and if after such reasonable efforts, DONALD A. KREISS has come to the conclusion that HOWARD STANLEY KREISS is deceased, then and in such event DONALD ALLEN KREISS may act on the presumption that HOWARD STANLEY KREISS is in fact deceased. Any such conclusion by DONALD made in good faith shall not be subject to review in any tribunal and shall be deemed conclusive upon all parties concerned. I make the aforesaid provisions and designate my son, DONALD ALLEN KREISS, as trustee with full knowledge of the fact that in his capacity as trustee, he may be called upon to make such a decision which would benefit himself and his children. I have complete faith and confidence in my said trustee and know that he will make a decision regarding any distribution to HOWARD STANLEY KREISS in accordance with the wishes which I have orally presented to my said son, DONALD ALLEN KREISS, from time to time.

The plaintiff contends that Donald's acquisition of legal and equitable interests in the Howard Trust within 180 days of the filing of his petition in bankruptcy vitiates the trust and renders the trust res property of the bankruptcy estate pursuant to 11 U.S.C. § 541 (1986) which provides:

§ 541. Property of the estate.

(a) The commencement of the case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

\* \* \* \* \* \*

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, device, or inheritance;

 \* \* \* \* \* \*

(b) Property of the estate does not include—

(1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor; or

 \* \* \* \* \* \*

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

 \* \* \* \* \* \*

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

The plaintiff argues that Donald's legal and equitable interests in the trust merged. The trustee reasons that Donald as custodian of his children's remainder acquires their equitable interest. He hypothesizes that Donald's legal title to the trust res, his own remainder interest, and his children's interests coalesce, thus resulting in Donald's complete and untrammeled ownership of the trust.

The defendants contend that there is no merging of interests and that § 541(b) of the Bankruptcy Code exempts Donald's legal interest from the bankruptcy estate. Defendants and Howard Kreiss, the intervenor, concede that Donald's contingent remainder constitutes property of the estate pursuant to 11 U.S.C. § 541(a)(5)(A).

The law dictates that Donald, as trustee, is held responsible for the protection and investment of the trust res as well as discretionary distributions to the life tenant. Under the first codicil, Donald, as a remainderman, inherits fifty percent of the remaining trust assets upon Howard's death. Furthermore, the first codicil appoints Donald custodian of his minor children's remainder interest, thus placing him in temporary control of their beneficial interests. The trustee, citing Donald's triple role, concludes that Donald's interests merge, the trust is invalidated, and Donald becomes the recipient of a testamentary gift. This conclusion, while facially appealing, does not withstand the scrutiny of the venerable law of trusts and estates.

█ The validity of a trust is not destroyed if one person is both trustee and beneficiary. *In re Fox's Estate*, 264 Pa. 478, 107 A. 863 (1919); *Vellacott v. Murphy*, 16 F.2d 700 (5th Cir.1927); Scott on Trusts § 151 at 1131 (1967 & Supp.1980). The trust is valid so long as there is one ascertainable beneficiary capable of enforcing it, thereby protecting the equitable interests. *Tilden v. Green*, 130 N.Y. 29, 28 N.E. 880 (N.Y.1891); *Holland v. Alcock*, 108 N.Y. 312, 16 N.E. 305 (N.Y.1888); 61 N.Y.Juris., Trusts § 54 at 163 (1962).

Trust law empowers Howard Kreiss, the life tenant, to enforce the trust holding Donald to a fiduciary standard. Howard has exercised this power by (1) bringing an action for accounting in the Surrogates Court and (2) appearing as the intervenor in the case at bar. As remaindermen, Donald's children, too, are empowered to enforce the trust. The children's rights are neither destroyed nor waived despite the appointment of Donald as custodian. Under applicable New York State law the statute of limitations is tolled during infancy, thus enabling the children to enforce the trust upon reaching their majority. N.Y. Civil Practice Law and Rules § 208 (McKinney Supp.1987).

The trustee's endorsement of the doctrine of merger is inapposite. The doctrine

of merger provides that "where one person has the *entire legal and beneficial interest,* he holds the property free of trust...." (Emphasis added.) Scott on Trusts § 151 at 1132 (1967 Supp. & 1980); *In re Fox's Estate,* 264 Pa. 478, 107 A. 863 (1919); *Clarke v. Clarke,* 121 Tex. 165, 46 S.W.2d 658 (1932). In the case at bar, it is clear that Donald does not hold the entire legal and beneficial interest. Howard, Jason and Jocelyn hold enforceable equitable interests precluding the merger of Donald's legal and equitable interest.

## DONALD'S LEGAL INTEREST IN THE HOWARD TRUST

Opposing positions are exposited by the trustee and the defendants on the applicability of 11 U.S.C. § 541(b)(1) (1986) which provides:

> Property of the estate does not include—
> (1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor.

The trustee contends that since Donald as trustee may withhold all payments of income to the life tenant, accumulating the interest for his own benefit, 11 U.S.C. § 541(b) (1986) is rendered inapplicable.

The defendants contend that Donald's legal interest in the Howard Trust falls squarely within the purview of the statute, thus excluding it from the bankruptcy estate.

■ The fiduciary duties of a testamentary trustee include the safeguarding of the trust assets and the implementation of the provisions of the trust instrument. This duty is enforceable by the holders of the equitable estates. Howard, Jason and Jocelyn all hold equitable estates in the trust and as discussed *supra* are empowered to compel Donald's compliance with the testator's wishes.

■ Donald's legal interest is neither assignable nor alienable, thus it is rendered valueless to the bankruptcy estate. *Vellacott v. Murphy,* 16 F.2d at 702 (5th Cir. 1927).

Consequently, the court holds that Donald's legal interest in the Howard Trust is excluded from the bankruptcy estate.

## DONALD'S EQUITABLE INTEREST IN THE HOWARD TRUST

■ Donald's equitable interest, a contingent remainder, however is a valuable future interest. "[A] contingent remainder ... is 'more than a mere possibility of an estate' and is alienable and subject to seizure under execution." *State ex rel. Cooper v. Cloyd,* 461 S.W.2d 833, 839 (Mo. 1971) (en banc); *McNeal v. Bonnel,* 412 S.W.2d 167, 169 (Mo.1967). Under New York law "[f]uture estates are descendable, devisable and alienable in the same manner as estates in possession." N.Y. Est. Powers & Trust Law § 6–5.1 (McKinney 1967); *Clowe v. Seavey,* 208 N.Y. 496, 102 N.E. 521 (1913).

The New York Court of Appeals exception in *In re Vought's Will,* 25 N.Y.2d 163, 303 N.Y.S.2d 61, 250 N.E.2d 343 (1969) is not applicable to the Kreiss will. Thus, Donald's remainder may be reached by creditors and trustees in bankruptcy. *Cohalan v. Parker,* 138 A.D. 849, 123 N.Y.S. 343 (1910) (future interest reached by creditors); *Riker v. Gwynne,* 201 N.Y. 143, 94 N.E. 632 (1911) (trustee in bankruptcy reached future interest under § 70(a)(5) of the Bankruptcy Act of 1898 (repealed by Bankruptcy Code of 1979)).

The court finds that under the First Codicil to Jack Kreiss' Will, Donald's remainder interest in the Howard Trust is property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(5)(A) (1986). *Vellacott v. Murphy,* 16 F.2d 700 (5th Cir.1927); *In re Garten,* 52 B.R. 497 (Bankr.W.D.Mo.1985).

## THE DONALD TRUST

With reference to the Donald Trust, the trustee alleges that in early April 1984, Donald, Jack, Berliner and Morris created a scheme which contravenes the spirit and letter of 11 U.S.C. § 541(a)(5)(A) by placing Donald's inheritance out of the reach of his creditors while safeguarding it for his future enjoyment. In the alternative, he argues that since 11 U.S.C. § 541(c)(2) is inapplicable to the Donald trust, the trust assets are rendered property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(5)(A).

The defendants contend that the plaintiff has failed to meet the requisite burden of proof required in compelling a finding of fraud and contravention of the Bankruptcy Code. They cite *Hull v. Farmer's Loan & Trust Co.*, 245 U.S. 312, 38 S.Ct. 103, 62 L.Ed. 312 (1917) (*"Hull"*) as authority, arguing that Jack Kreiss, like the non-debtor testator in *Hull*, was free to arrange his estate so that his assets would not fall within the reach of Donald's creditors. The defendants contend that the Donald Trust is a spendthrift trust, within the purview of 11 U.S.C. § 541(c)(2) (1986), and therefore excluded from the bankruptcy estate.

A FRAUDULENT SCHEME

The trustee attacks the validity of the Donald Trust on the basis of fraud. He attempts to establish a scheme in which Donald's creditors were defrauded out of the assets of Jack Kreiss' testamentary estate. The trustee's offer of proof fails to meet the requisite burden of proof. "It is fundamental that in the absence of special circumstances fraud will not be presumed, assumed or inferred." 24 N.Y.Juris., Fraud and Deceit § 284 at 370 (1962).

■ To carry the burden of proof in an allegation of fraud or deceit, the plaintiff must provide clear and convincing evidence that the fraud occurred. *Southern Development Co. v. Silva*, 125 U.S. 247, 8 S.Ct. 881, 31 L.Ed. 678 (1888); *Manchel v. Kasdan*, 286 A.D. 483, 144 N.Y.S.2d 694 (1955); *aff'd.*, 1 N.Y.2d 734, 151 N.Y.S.2d 940, 134 N.E.2d 687 (1956); *Chudnowsky v. Re-mo Holding Corp.*, 274 A.D. 192, 80 N.Y.S.2d 32 (1948), *rev'd. on other grounds*, 298 N.Y. 904, 85 N.E.2d 55 (1949); 24 N.Y.Juris., Fraud and Deceit § 284 at 371 (1962).

■ In the case at bar the trustee attempts to prove the fraudulent concealment of assets by alleging the Donald Trust is a sham in which Donald controls the assets through the manipulation of Berliner and Morris, the trustees. It is incumbent on the trustee to establish by clear and convincing evidence that Berliner and Morris are the agents of Donald, acting on his orders and under his dominion and control.

Furthermore, the trustee must prove by a fair preponderance of the evidence that Donald wrongfully and knowingly concealed assets of the estate. *In re Bryson*, 49 F.2d 408 (N.D.Tex.1931).

The evidence must show that Jack's decision to change his will was a plot entered into with Donald, the debtor, to circumvent 11 U.S.C. § 541(a)(5)(A), thus insuring Donald's enjoyment of his inheritance at the expense of his creditors.

The trustee has failed to prove by clear and convincing evidence that Berliner and Morris are Donald's agents, or that Donald wrongfully concealed assets of the estate from his creditors directly or as part of a plot entered into with Jack, his father. Therefore the trustee has not met the requisite burden of proof.

It is incumbent upon the court to rely upon the probative evidence to reach its conclusions. It cannot be persuaded by allegations which rise like smoke, black, murky and pungent, clouding the pertinent issues, and disappearing on close examination. The court must disavow vaporous allegations and avoid any inference that "where there is smoke there is fire." "Fraud is a fact, the existence of which is ascertained like other facts by comparing and weighing the evidence." 24 N.Y.Juris., Fraud and Deceit § 283 at 370 (1962); *In re Bennett's Estate*, 205 N.Y.S.2d 50 (1960). Where as in the case at bar the fraud is one of concealment its proof lies in evidence of the suppression or disguise of the truth. *F.H. Hiliel Co. v. Motor Haulage Co., Inc.*, 140 N.Y.S.2d 51 (1955), *aff'd.*, 1 A.D. 782, 149 N.Y.S.2d 224 (1956); 24 N.Y. Juris., Fraud and Deceit § 104 at 158 (1962).

The Second Circuit Court of Appeals in *In re Saphire*, 139 F.2d 34 (2d Cir.1943) recites the basic rule that "[i]n cases of concealment of a retained interest in fraud of creditors it is seldom, if ever, that direct evidence of the retained interest is available." *In re Saphire*, 139 F.2d at 35 (2d Cir.1943). However, while inference and deduction are permitted, the proof offered cannot be based solely upon mere suspicion, supposition or conjecture. *Lynch v.*

*Gibson,* 254 A.D. 47, 3 N.Y.S.2d 672, *aff'd.,* 279 N.Y. 634, 18 N.E.2d 36 (1938); *Waggoner v. Jageacks,* 241 A.D. 324, 272 N.Y.S. 182 (1934). "Where there is room for an inference of an honest intent, the proof of fraud is wanting." 24 N.Y.Juris. Fraud and Deceit § 284 at 371 (1962).

The trustee offers as evidence of the alleged fraudulent scheme, without the requisite proof, the flow of substantial fees from Donald to MB & M, Berliner and Morris. MB & M has been retained as attorneys for the estates of Jack and Lillian Kreiss. Berliner represented Donald in his bankruptcy petition. Berliner and Morris are executors and co-trustees of Jack's will and the Donald Trust, respectively. The trustee posits that Berliner and Morris are Donald's agents, acting in accordance with his instructions and in complete disregard of their sworn obligations as officers of the court, the code of ethics, or their fiduciary duties, simply because they have been retained in their various capacities.

It is undisputed that both Jack and Donald retained MB & M as their attorneys on various occasions, a practice not uncommon among satisfied clients of a law firm. Conversely, attorneys rely upon their earned reputations to retain clients and garner their recommendations to establish their legal practices.

The trustee infers that an attorney who has represented a client on several matters becomes the "hired gun" of that client, foregoing all integrity, acting exclusively at the direction of the one who pays his fee. The court cannot make such a presumption without clear and convincing evidence that Berliner and Morris acted to contravene the Bankruptcy Code and fraudulently deprive Donald's creditors of their share of Jack's estate. An examination of the trustee's case reveals a paucity of such evidence.

At trial the trustee presented lengthy testimony on an inter vivos gift made by Jack, the testator, to Meryl Greenbaum, sister of Randi Kreiss, in the sum of $200,-000.00.

The trustee's attempt to use this fact as proof of a fraudulent scheme disregards the reality that Jack was not the debtor and was free to spend his money as he chose, including giving it away. Furthermore, the gift was used by Randi to buy the Kreiss home from the trustee in a court approved sale after notice to creditors.

■ Similarly, the trustee questioned inter vivos gifts made by Jack to Jason and Jocelyn on May 18, 1984. For these gifts to have bearing on the issue at bar, the trustee must prove that (1) the Donald Trust is part of the bankruptcy estate, (2) the gifts had actually been made after Jack's death and were not inter vivos gifts, and (3) they improperly depleted the residuary estate thus impacting on the size of the Donald Trust. Since the trustee has failed to carry the requisite burden of proof establishing fraud in the Donald Trust, these ancillary issues are not within the jurisdictional purview of the bankruptcy court.

Lastly, the trustee argues that *Ullman v. Cameron,* 186 N.Y. 339, 78 N.E. 1074 (1906) is controlling in this case. In *Ullman* the testamentary trust instrument required the trustee to pay the life tenant the whole or any part of the trust assets that he desired for the purpose of engaging in business. *Ullman v. Cameron,* 186 N.Y. at 340, 78 N.E. 1074 (1906).

The trustee's lack of discretion rendered the trust void as to creditors permitting them to enforce their judgments against the trust res. It is "contrary to sound public policy to permit a person to have the absolute and uncontrolled ownership of property for his own purposes, and to be able at the same time to keep it from his creditors." *Ullman v. Cameron,* 186 N.Y. at 346, 78 N.E. 1074 (1906) (quoting *Hallett v. Thompson,* 5 Paige 583 (1836)). The *Ullman* court concluded "property is mine which becomes mine for the asking, and no words can make an instrument strong enough to hold it for me and keep it from [my creditors]." *Ullman v. Cameron,* 186 N.Y. at 346, 78 N.E. 1074 (1906).

The trustee incorrectly concludes that *Ullman* is directly on point with the case at bar. In *Kreiss* the granting of a loan to Donald by the co-trustees is not automatic but at the discretion of the trustees. Berliner testified in court that before any loan

would be granted, its purpose and the liklihood of repayment would be considered. As has been discussed *supra*, no evidence has been provided establishing Berliner and Morris as the agents of Donald. Thus, unlike *Ullman*, Donald is not guaranteed the receipt of a loan should he seek one. Furthermore, although the trust instrument holds the trustees harmless if a loan is granted and not repaid, the trustees are still accountable to the remaindermen for proper administration of the trust.

For the above reasons, the court finds the trustee has failed to carry his burden of proof in establishing fraud.

SECTION 541(c)(2)

 Section 541 of the Bankruptcy Code is expansive, including as property of the estate all property received by inheritance, bequest or device within 180 days of the filing.

However, its breadth is clearly restricted by § 541(c)(2) which provides:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2).

Thus, Congress specifically exempted spendthrift trusts to the extent enforceable under applicable state law from inclusion in the bankruptcy estate. H.R. No. 595, 95th Cong., 1st Sess. 368 (1977); S.R. No. 989, 95th Cong., 2d Sess. 83 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; *Regan v. Ross*, 691 F.2d 81 (2d Cir.1982).

The defense contends that the Donald Trust is a spendthrift trust under the provisions of N.Y.Est.Powers and Trust Law § 7–1.5 (McKinney Supp.1987) which provides:

> (a) The interest of the beneficiary of any trust may be assigned or otherwise transferred, except that:
> (1) The right of a beneficiary of an express trust to receive the income from property and apply it to the use of or pay it to any person may not be transferred by assignment or otherwise unless a power to transfer such right, or any part thereof, is conferred upon such beneficiary by the instrument creating or declaring the trust.

N.Y.Est.Powers and Trust Law § 7–1.5(a)(1) (McKinney Supp.1987).

N.Y.Est.Powers and Trust Law § 7–1.5(a)(1) effectively renders all trusts in New York mandatory spendthrift trusts unless designated otherwise in the trust instrument. Smith, *Spendthrift Trust—The Restriction on Alienation of Remainder Interest in New York*, 21 Syracuse L.Rev. 213, 216 (1970).

Under the terms of the Donald Trust, Donald receives trust income at the discretion of the trustee. Until actual payment is made, he has only an expectancy which may or may not materialize over time, depending solely on the trustee's discretion. It has been held that this type of discretionary trust acts as a further restriction on the beneficiary's right to alienate or assign trust assets. *First Northwestern Trust Co. of So. Dakota v. Internal Rev. Serv.*, 622 F.2d 387, 391 (8th Cir.1980).

Consequently, the restrictive nature of the Donald Trust renders it a discretionary spendthrift trust pursuant to 11 U.S.C. § 541(c)(2) (1986).

The court holds that for the reasons stated above, the Donald Trust is not property of the estate.

DECISIONS PENDING SINE DIE

The disposition of several matters before the court have been held *sine die* pending the outcome of the trial on the merits.

Based upon the findings of fact and conclusions of law stated herein, these matters are disposed of as follows:

(1) The court grants the attorneys for the defendants, Certilman Haft Lebow Balin Buckley & Kremer, interim compensation in accordance with their application;

(2) The injunction on the Donald Trust prohibiting distribution of trust assets is vacated;

(3) The injunction on the Howard Trust is vacated. The bankruptcy estate succeeds to Donald's remainder interest;

(4) The plaintiff's motion to hold defendants Berliner and Morris in contempt of court is denied.

SETTLE ORDER.